ISAAC P. POWERS, Appellant, *v.* HIRAM KNAPP, Respondent.

*Evidence of being a stockholder of a corporation — what transfer of stock does not avoid liability under § 10, chap. 40 of 1848.*

If the only evidence of a person being a stockholder in a corporation is found in the fact that he signed the original certificate of organization, acted as a trustee of the company, indorsed over the certificates of stock made out to him, and frequently declared himself to be a stockholder, it is still a question of fact whether, under all the circumstances, and in the light of his explanations, he has ever made a contract with the company by which he has agreed to become the owner of any of its shares of stock. But when, in addition, it appears that an agreement was signed by him with other corporators, whereby he agreed to take and pay for thirty shares of stock, there is sufficient evidence to require the court to hold that such person did become a stockholder of the corporation.

The liability imposed by section 10 of chapter 40 of the Laws of 1848 is not avoided by the fact that a stockholder assigned his stock prior to the accruing of the creditor's indebtedness, where the transfer of such stock is not entered in the book required by section 25 of that act to be kept by the corporation.

APPEAL by the plaintiff, Isaac P. Powers, from a judgment of the Supreme Court in favor of the defendant, entered upon the verdict of a jury at the Jefferson County Circuit, in the office of the clerk of Jefferson county on the 31st day of May, 1892, dismissing the plaintiff's complaint, and also from the order denying the plaintiff's motion for a new trial, and to set aside the verdict made upon the minutes.

The action was brought by a creditor of the Winslow & Knapp Lumber Company, a corporation organized under chapter 40 of the Laws of 1848, against the defendant as a stockholder thereof, under a claim that he was liable under the provisions of section 10 of that act.

*Hannibal Smith,* for the appellant.

*Watson M. Rogers,* for the respondent.

PARKER, J.:

In December, 1889, the defendant signed with Egbert W. Knapp, Norris Winslow and two others, the original certificate of organization of the "Winslow & Knapp Lumber Company," in which it was stated that he was one of the trustees of such corporation. At the same time he signed with the same parties an agreement whereby he agreed to take thirty shares of the capital stock of the Winslow & Knapp Lumber Company, and pay therefor the sum of $100 per share, "when said company is duly organized, and we are called upon for such payment by the trustees of said company."

On the trial of this action, he testified that he understood the paper was for the purpose of organizing a company, but that he signed it simply to assist the others, who supposed that five persons were necessary to effect the organization, and under the agreement with them that he should put nothing into the company, and take nothing out of it; that it was agreed between himself, Egbert Knapp and Winslow that he was to have no interest in the concern, and that as

soon as they became incorporated he was to assign back to them anything that was supposed to be his.

The certificate was duly filed and the company entered upon the transaction of its business. Under date of March 11, 1890, two stock certificates of fifteen shares each were filled out upon the book of the corporation by its secretary to this defendant, and on the twenty-fifth of March they were detached from their stubs in such book, and laid upon a table in its office, and the defendant was called in and requested by Egbert Knapp and Norris Winslow to execute the assignment in blank which was printed on the back of such certificates. The defendant did so, and immediately left the office, leaving the certificate upon the table. Egbert W. Knapp and Norris Winslow thereupon each took one of such certificates and retained it as his own property. The defendant never paid anything to the company for any stock, nor did he ever ask for any issue of stock to himself, nor was he ever called upon by the company to pay for any, nor was any ever issued to him except as above stated, and he did not receive anything for executing the assignment on the back of said certificates. No entry of such transfer in the manner required by the 25th section of the act, was ever made upon the books of the company.

Subsequently and on October 27, 1890, the defendant attended a meeting of the trustees and signed a written consent that the company mortgage its property, in which it was stated that he was the owner of thirty shares of the company's stock. Such was the only meeting of the trustees that he ever attended. In March, 1891, the defendant also signed with others, and swore to a petition for the voluntary dissolution of the company, in which it was stated that he was one of the trustees, and the owner of thirty shares of its capital stock which had been paid for in full. Upon such petition the company was subsequently dissolved by order of court and a receiver of its property appointed.

The defendant testified that he knew resolutions were passed at the meeting of the trustees authorizing a mortgage, but had no recollection of signing the consent. As to the petition, he knew it was an application to dissolve the company, but had no further knowledge of its contents; that he signed the papers because he was requested to do so by Egbert W. Knapp. There was also evidence

tending to show that the defendant was a laboring man, ignorant of such business, in the employment of Knapp & Winslow, and easily influenced by them.

The plaintiff's debt was for money loaned the company, and accrued on October 29, 1890. The whole of the capital stock of the company had not been paid in, nor had the certificate required by section 10 of the law (Chap. 40) of 1848 ever been filed and recorded.

Upon these facts the plaintiff claimed at the trial that the court should hold, as matter of law, that the defendant was a stockholder of the company to the extent of thirty shares of its stock. The court declined to so hold and left it to the jury as a question of fact. The jury found that the defendant was never a stockholder of the company. Such ruling and such finding are claimed to be errors upon this appeal.

The relation of stockholder to a corporation depends entirely upon contract, and to establish it, it must appear that the minds of the parties met; that the defendant agreed to become a stockholder in the corporation with the privileges and responsibilities of such relation, and that the corporation accepted him as such. (*Glenn* v. *Garth*, 133 N. Y. 31; Morawetz on Corp. [2d ed.] §§ 24, 46.)

Section 10, chapter 40 of the Laws of 1848, under which this action is brought, imposes its liabilities only against the stockholders of a corporation, and the plaintiff is, therefore, required, in order to maintain his action, to establish the fact that the defendant was a stockholder of the corporation at the time his debt was contracted. This he could only do, within the authorities above cited, by showing that such a contract, either express or by implication, had at some time been made between the defendant and the corporation.

If the only evidence of such a contract was to be found in the fact that the defendant had signed the original certificate of organization, had acted as a trustee of the company, had indorsed over the two certificates of stock made out to him, and had frequently declared himself to be a stockholder, I should say that nevertheless it was a question of fact whether, under all the circumstances, and in the light of his explanations, he had ever actually made a contract with the company by which he had agreed to become the owner of any of its shares of stock. But when we take into con-

sideration the agreement signed by him, and the other corporators, whereby he agreed to take and pay for thirty shares of such stock, a very serious question is presented whether the written and conceded evidence does not contain all the elements of the needed contract.

The subscription to take the thirty shares, alone by itself, would not constitute a contract with the company. (*Dorris* v. *Sweeney*, 64 Barb. 636; *Lake Ontario Shore R. R. Co.* v. *Curtiss*, 80 N. Y. 219.) But it has been held by a General Term of this court, in *Dorris* v. *French* (4 Hun, 292), that when such an agreement is consummated by signing the certificate of organization, it becomes one transaction, and is equivalent to subscribing formal articles of association, and the agreement may be enforced by the company itself. So in *Phœnix Warehousing Company* v. *Badger* (67 N. Y. 294), the defendant subscribed the certificate of organization, and placed opposite his name the number of shares taken by him, and it was held that such was a binding subscription for stock, and made him a stockholder in the company.

The statute does not require that the number of shares taken by a subscriber should be stated in the certificate, nor does it require that any subscription for stock should have been made at all before filing such certificate. (Morawetz on Corp. § 33.) Therefore, if a statement made in such certificate is a sufficient contract with the company, it would seem that a written agreement for thirty shares, made with the same corporators simultaneously with signing the certificate of organization, should be deemed a contract with the company, and as effectual as if made in the certificate itself.

The rule held in *Dorris* v. *French* (*supra*), is so far sustained by the Court of Appeals, and on principle we think that such rule is the correct one. The formation of every corporation is based upon a contract between individuals that they will form such an association, and assume the relations of shareholders in it. The act of the Legislature is simply to confer upon the individuals so contracting the right to form the corporation, and of acting in a corporate capacity. Therefore, when a number of individuals agree among themselves that they will take certain shares in a corporation to be formed, and, at the same time, themselves execute the certificate and take the steps necessary to acquire the corporate franchises

given by the State, each act is but a part of the one contract between them, by which they form the association intended. (Morawetz on Corp. §§ 24, 25. See, also, *Buffalo & Jamestown R. R. Co.* v. *Gifford*, 87 N. Y. 294.) As applied to this case, such reasoning assumes that the writings express the real transaction between the defendant and the other corporators, but the defendant claims that such is not the fact. From his explanation it is clear that he understood that he was joining with the others in forming the company, and that he intended to do so; also, that he understood that he was signing an agreement to take and pay for thirty shares of its stock. It is quite likely that he did not understand the liability that would attach to to him if he became a stockholder; but there was no fraud or deception practiced upon him as to the contents of any paper he was signing, and his ignorance as to the effect of the relations he was voluntarily assuming with the company does not relieve him from the legal responsibilities imposed upon them.

As to the rest of his explanation, it is not quite clear whether he means that it was agreed by parol that the writing should not be binding upon him, or that Egbert Knapp and Norris Winslow agreed that they would take upon themselves all the obligations which he assumed, and save him harmless from any liability thereon. The fact that he agreed to assign to them anything that was supposed to be his, as soon as the company was fully organized, seems to indicate that the latter agreement was the understanding which he had of the matter. But whichever way it was is not very material, as we are of the opinion that no arrangement that was made between him and his associates, operating to contradict the written contract, can be invoked to relieve him from its obligations.

In *Phœnix Warehousing Co.* v. *Badger* (6 Hun, 293), the defendant had subscribed in the certificate of organization for 250 shares of stock. When sued on behalf of the company's creditors for the subscription price thereof, he sought to defend on the ground that he had agreed with the other incorporators, at the time he subscribed, that he would be liable for only fifty shares, and that they would take the other 200 shares. The court held that as against the creditors of the company the plain terms of the subscription could not be contradicted, and that the agreement constituted no defense. That case practically decides the question presented by this claim,

and it is but the application of a very familiar rule that the terms of a written contract cannot be varied or nullified by a contemporaneous parol agreement. (*Engelhorn* v. *Reitlinger*, 122 N. Y. 76 ; *Thomas* v. *Scutt*, 127 id. 133. See, also, *Upton* v. *Tribilcock*, 91 U. S. 45.)

It appears, then, from the controlling evidence in the case, that the defendant did make a contract with the company to take and pay for thirty shares of its stock. The fact that he never paid for it does not make him any less a stockholder, nor relieve him from liability as such. His subscription was accepted by the company, stock passed to his name on its books, and he acted as a trustee until the company was dissolved. Here was a contract, mutual between the company and himself, and one that a receiver of the company could have enforced against him for the benefit of its creditors. (*Wheeler* v. *Millar*, 90 N. Y. 353 ; *Buffalo & N. Y. City R. R. Co.* v. *Dudley*, 14 id. 336.)

The question submitted to the jury was, therefore, not an open one. Upon the facts proven the court should have held that the defendant did become a stockholder. But the defendant claims that, even though the defendant did become a stockholder, it is not disputed but that he assigned his stock before the plaintiff's debt was incurred, and, hence, he cannot be held liable under section 10.

Section 25 of the act provides that a book shall be kept by the officers of the company, containing the names of the stockholders, etc., and that no transfer of stock shall be valid, etc., etc., unless entered upon such book. It is not claimed that the transfer by the defendant was entered upon such book, and, therefore, by the well-settled law of this State, his assignment was not effectual to relieve him from the liabilities imposed by section 10. (*Shellington* v. *Howland*, 53 N. Y. 372, 376.)

In *Johnson* v. *Underhill* (52 N. Y. 203, 209), it is said that both the assignor and assignee are liable to creditors until the transfer has been entered on the books.

The cases cited by the respondent's counsel upon this question do not conflict with the above. It has always been held that as between the parties to the transfer, and even as between the parties and the company, an assignment may be valid to transfer a good title without being entered on the books. (*Chemical National Bank* v.

*Colwell,* 132 N. Y. 250 ; *Cutting* v. *Damerel,* 88 id. 410 ; *Isham* v. *Buckingham,* 49 id. 216.)

But as against a party who does not stand in the attitude of one subrogated to the rights of the company, but is suing under a statute that creates an original liability and renders a stockholder liable whether he is a debtor to the company or not, as does the section 10 in question, no assignment is operative until it has been entered as required by section 25. The company can waive nothing as against a creditor so suing.

Our conclusion is that the court erred in submitting to the jury the question whether the defendant ever became a stockholder in the company, and that the verdict of the jury on that question is not sustained by the controlling evidence in the case.

The judgment and order denying a new trial must be reversed on the law and facts and a new trial granted, with costs to abide the event.

HARDIN, P. J., and MERWIN, J., concurred.

Judgment and order reversed on the law and facts and a new trial ordered, with costs to abide the event.