EDWARD P. BEALS and Others, Respondents, *v.* BUFFALO EXPANDED METAL CONSTRUCTION COMPANY, Defendant, and WILLIAM H. SCHMIDT, Appellant.

*Corporation — when the relation of shareholder arises — estoppel to deny that one is a shareholder — what contract to pay for the stock will not exonerate a subscriber therefor from liability to creditors — such liability, how enforced — assailing the verity of a judgment against the corporation.*

The relation of shareholder in a corporation is created by the subscription agreement, and it is not essential to such relation that a certificate of stock be actually issued.

Where such subscriber accepts the directorship and presidency of the corporation, and does other acts which can only be done by a shareholder, he is estopped from denying the existence of that relation, notwithstanding the fact that no stock book was kept by the corporation and that he never received any certificates of stock.

Where, contemporaneously with a subscription to the stock of a corporation, the subscriber and the corporation enter into an agreement by which the subscriber, in consideration of the delivery to him at a future time of the amount of stock for which he subscribes, agrees to advance moneys to the corporation up to the par value of said stock, the sums so advanced to be repaid to him " immediately upon the receipt and payment of such contracts for which such sums have been advanced," such agreement is not, as against the creditors of the corporation, to be read in connection with his subscription.

The execution by the subscriber, with knowledge of the insolvency of the corporation, of an assignment of the agreement to a third person, who assumes the subscriber's obligations thereunder, and of a release to the corporation of all demands existing, and those subsequently accruing which might inure to the subscriber, and the transfer of the agreement, by the assignee thereof, to, and its acceptance by, the corporation, do not operate to release the subscriber from liability upon his unpaid subscription.

Such liability may be enforced in a sequestration action, brought in pursuance of section 1784 *et seq.* of the Code of Civil Procedure, by a judgment creditor of the corporation, whose judgment is based upon an indebtedness, a portion of which was incurred after the subscriber had assigned his contract, and the plaintiff will not be required to seek his remedy in an action under section 54 of the Stock Corporation Law (Chap. 688, Laws of 1892).

*Semble,* that in the sequestration action the subscriber may assail the verity of the plaintiff's judgment.

APPEAL by the defendant, William H. Schmidt, from a judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the county of Erie on the 12th day of June, 1899,

upon the decision of the court rendered after a trial at the Erie Special Term.

The Buffalo Expanded Metal Construction Company was a domestic corporation, the certificate for the creation of which bore date on the 15th day of January, 1898, and provided for a capital stock of $20,000. The defendant Schmidt signed the same on the eighteenth day of that month, agreeing to take $10,000 of such stock. He was named as one of the directors of the corporation, and on the organization of the board was elected its president, retaining the position until the alleged assignment of his interest in the corporation on the eighteenth day of May following.

Contemporaneously with his execution of the certificate of incorporation, said construction company, by said Schmidt, as its president, and also by its secretary, entered into a written agreement with said Schmidt, whereby, in consideration of " ten thousand dollars par value of the stock " of said company, to be delivered to said Schmidt " when the stock of the said company is ready to be issued and delivered," he agreed to advance from time to time money required in the conduct of its business " upon order of the board of directors " up to the sum of $10,000. The sums so advanced " shall be repaid in cash " to said Schmidt " immediately upon the receipt and payment of such contracts for which such sums have been advanced." The defendant Schmidt contributed some money to the corporation and indorsed its promissory notes at the request of the directors. The exact amount of the said notes and of the said cash does not appear, but it aggregated nearly $10,000, all of which, however, were paid by the company.

No stock book was ever kept by the corporation, and no certificates of stock were in fact ever issued to Schmidt or to any of the incorporators of the company.

On the 18th day of May, 1898, said Schmidt, by an assignment in writing, transferred to one Laing his interest in said concurrent contract providing for an issuance of the stock to him, and Laing assumed the burden of said agreement imposed upon Schmidt. The latter also authorized Laing to " discharge said contract without any further consent or agreement therefor by said William H. Schmidt," and Schmidt also released the company from any demands existing or subsequently accruing which might inure to him. Two days

later said Laing transferred the interest thus acquired to the corporation upon like condition that he was to be released from all liability under its said agreement with Schmidt. This assignment was formally " accepted " by resolution of the company and the Schmidt agreement rescinded. At the time of the assignment by Schmidt the company was insolvent, a fact known to him.

On the 14th day of September, 1898, the plaintiffs recovered a judgment against the defendant corporation for $305.17 damages. The basis of this was goods sold to it by them, about one-half thereof being for machinery delivered prior to the alleged assignment by Schmidt and the residue several months thereafter.

*Wallace Thayer*, for the appellant.

*August Becker*, for the respondents.

SPRING, J. :

The plaintiffs are judgment creditors of the corporation defendant and have brought this action to obtain a judgment sequestrating its property in pursuance of section 1784 of the Code of Civil Procedure. The contention is that the defendant Schmidt is a debtor of the company to the amount of stock for which he agreed to pay $10,000, and that indebtedness is an asset of the corporation and chargeable with the payment of its debts.

It was not necessary that certificates of stock be issued to Schmidt to constitute him a shareholder of the corporation. His subscription created that relation. (Morawetz Priv. Corp. § 56; *Kohlmetz* v. *Calkins*, 16 App. Div. 518.)

He accepted the directorship and presidency, acted in these capacities, and assumed duties in recognition of his connection with the company as stockholder by virtue of his subscription agreement, and he cannot now disclaim the existence of that connection. ( *Wheeler* v. *Millar*, 90 N. Y. 353; *Powers* v. *Knapp*, 71 Hun, 371.)

Article 3 of title 2, chapter 15, sections 1784–1796, provides a method for the dissolution of a corporation and also to enforce by action " the individual liability of the officers or members of a corporation." Section 1790 in this article permits the creditor to make the officers and members of said corporation parties, if they

"are made liable by law, in any event or contingency, for the payment of his debt; *   *   *   and their liability may be declared and enforced by the judgment in the action." Sections 1792, 1793 provide for the ascertainment of each defendant's liability, and for a "distribution of the property of the corporation" among its creditors; and by section 1794, if the property of the corporation is inadequate to meet its obligations, the judgment "must adjudge that each stockholder pay into court the amount due and remaining unpaid on the shares of stock held by him, or so much thereof as is necessary to satisfy the debts of the corporation."

It will be observed that while the theory of this scheme is primarily the sequestration of the property proper of the corporation at the instance of a creditor, yet to prevent resort to another action a stockholder may be included as a party. His liability need not depend upon the fact of his personal liability by virtue of his membership in the corporation, but if it exists "in any event or contingency," he may be brought in and made to respond. The claim in this action is that the defendant Schmidt owed the corporation the amount of his stock subscription, and that liability is sought to be enforced as a debt due the company, and, hence, amenable to its creditors. The enforcement of that indebtedness is within the letter and spirit of this article, and, as the suit is in equity, the rights of all the parties can very properly be adjusted in one action. As was said in *Stoddard* v. *Lum* (159 N. Y. 265) at page 273: "Subscribers to the stock of a corporation incur a debt which may be enforced by any common-law or equitable remedy. *   *   *   The capital stock of a corporation is a fund set apart for the payment of its debts. It is a substitute for the personal liability which subsists in private copartnerships. The creditors have a lien upon it in equity. Unpaid stock is as much a part of this pledge and as much a part of the assets of the company as the cash which has been paid in upon it."

It is urged on behalf of the defendant that he never was liable for the payment of this stock; that the agreement which accompanied his subscription must be read in connection therewith. That is probably true as to the parties to it, but not as to the creditors of the corporation. His subscription was an absolute agreement to become a shareholder to the extent of $10,000. The certificate

provided for a corporation within the Business Corporation Law (Laws of 1890, chap. 567, as amd. by chap. 691 of the Laws of 1892), and section 5 requires payment of one-half of the capital stock of such a corporation within one year from its incorporation, and by the Stock Corporation Law (Laws of 1890, chap. 564, as amd. by Laws of 1892, chap. 688), section 41, each subscriber shall pay ten per centum of his subscription in cash. A secret agreement by which the shareholders can evade these mandatory statutes is against public policy and will not be upheld against creditors. (*Yonkers Gazette Co.* v. *Jones,* 30 App. Div. 316; *Armstrong* v. *Danahy,* 75 Hun, 405; *White Mountains Railroad* v. *Eastman,* 34 N. H. 124.)

Cook on Stock and Stockholders says (at § 137): " Neither party is permitted to prove a different contract from that expressed in the written instrument. Under the rule not even a separate written contemporaneous contract is admissible to change the subscription contract." (See, also, Id. § 191.)

The defendant accepted offices and did acts permissible only by a stockholder. If his secret agreement were to be operative, he could receive the honors consequent upon his apparent ownership of one-half of the capital stock of this moneyless corporation, but hoist the agreement to prevent a creditor enforcing any demand against him. Had dividends been declared his ownership of capital stock would not have been questioned by him.

It is urged, with much plausibility, that even if Schmidt be a stockholder the remedy adopted by the plaintiff is not the proper one, but his action should have been under section 54 of the Stock Corporation Law. That plaintiff has no better standing than the corporation itself, and as all the stockholders fathered the private agreement, no action would lie at its instance against Schmidt to recover his stock subscription. As I have already sought to show, the purpose of the statute is more extended than might be inferred from section 1784 of the Code taken by itself. Beyond the sequestration of the property of the corporation in its custody, the relief reaches out for whatever liability can be acquired. Nor is this restricted to what technically belongs to the corporate entity, but liability " for the payment of the debt" of the creditor is one of the tests for making a stockholder a party.

It is asserted that an action under section 54 of the Stock Corporation Law would have enabled defendant to assail the verity of the judgment. Section 55 of that law makes the recovery of a judgment and the issuance of an execution necessary preliminaries to an action against the stockholder, " and the amount due on such execution shall be the amount recoverable, with costs, against the stockholder." If the judgment is incorrect in amount or collusively obtained, whether the action be pursuant to the Code provisions or to the Stock Corporation Law, an opportunity may be given to test its validity. The plan outlined in the Code does not in terms make the judgment conclusive against a creditor. If such be the fact, however, then, as in the other case, it may be incumbent upon him to apply to reopen the judgment and defend. However, that question does not seem to be specifically raised in this case. All the facts appear upon which the defendant's liability can be established in either case, and the discussion of what remedy should have been resorted to is somewhat academic, as the relief granted in this suit, in connection with the stipulation, protects the rights of all the parties.

We come now to a question of considerable difficulty in this somewhat intricate case. On the eleventh day of May the defendant Schmidt assigned and transferred all his interest arising under his agreement and that was ratified by the directors of the corporation. One-half of the judgment debt was incurred subsequently to this transfer, and it is strenuously contended that the assignment ended the liability of this defendant. Section 48 of the Stock Corporation Law provides that every transfer of the stock in a corporation " in contemplation of its insolvency " shall be void. It has been held, however, that a transfer in good faith, even where the stock had not been fully paid up, is valid against future creditors. (*Sinclair* v. *Fuller*, 158 N. Y. 607; *Rochester & K. F. Land Co.* v. *Raymond*, 158 id. 576; *Close* v. *Brady*, 4 Misc. Rep. 474; affd., 144 N. Y. 648.) There is, however, another obstacle preventing defendant from being released. The Stock Corporation Law requires every stock corporation to keep a stock book, and section 29 provides that " No transfer of stock shall be valid as against the corporation, its stockholders and creditors for any purpose, except to render the transferee liable for the debts of the

corporation according to the provisions of this chapter, until it shall have been entered in such book as required by this section, by an entry from and to whom transferred.   Such latter book shall be presumptive evidence of the facts therein so stated in favor of the plaintiff, in any action or proceeding against such corporation or any of its officers, directors or stockholders."   The authorities have given full effect to this provision.   (*Johnson* v. *Underhill*, 52 N. Y. 203; *Shellington* v. *Howland*, 53 id. 371; *Powers* v. *Knapp*, 71 Hun, 371, 377; Thomp. Corp. § 3284.)

The following is from *Shellington* v. *Howland* (53 N. Y. *supra*), at page 376 : "An entry upon the books of registry of stockholders is required for the protection of the company and its creditors, and each may hold the stockholders to their liability as such until they have divested themselves of the title to their shares by a completed transfer, as prescribed by law.   No secret transfer will avail to release the stockholder from his obligations, or deprive the creditors of the corporation of the right to look to him as the responsible party liable for the debts of the corporation."   No stock was ever issued to the defendant Schmidt, and no stock book was ever kept, and these facts are urged to relieve him from this rule.   He was responsible very largely for these conditions.   He owned one-half the stock and was both director and president.   The issuing of the stock certificates and the keeping of the stock books in compliance with the Stock Corporation Law rested with him.   He cannot while in control violate the explicit mandates of the statute and then assert this violation in exoneration of himself from liability.   The case differs from *Chemical National Bank* v. *Colwell* (132 N. Y. 250), as there the defendant was not responsible for the failure to procure the transfer book and the record in fact was made long before the debt in question was incurred.

The whole facts surrounding this transaction tend to cast an imputation upon the good faith of the defendant Schmidt.   He subscribed for a large block of this stock and was vigilant in the management of the company's affairs.   He sought by a secret agreement to obtain the stock substantially as a gratuity.   Under his management there were no books from which creditors could obtain any light as to the ownership of the capital stock.   The only information available to them was the certificate of incorporation which

indicated that Schmidt was the *bona fide* owner of one-half of its capital and this continued to be the sole source of information accessible to those dealing with the company even after the agreement between Schmidt and Laing. In a few months the corporation became insolvent. The defendant then assigned his stock to another stockholder, and two days later this transferee dumped it on the corporation. The conclusion seems clear that Laing was a man of straw to act as Schmidt's medium to get his stock foisted on the company. In his agreement with Laing he released the corporation from any demands accruing to him against it, thus foreshadowing the assignment of Laing to the company. That Schmidt was liable for the outstanding debts is plain, and in view of the unsavory flavor of the transfer, I am satisfied he failed to terminate his relations with the corporation.

Neither the collateral agreement nor the written transfer to Laing refers to the subscription contract. Within the strict letter of these papers we might say neither includes the stock accruing to Schmidt by virtue of his contract to take and pay for $10,000 par value of capital stock of this company. I am satisfied, however, that the intention of the parties was to embrace in each agreement the stock contract, and have so assumed in considering the case.

The defendant Schmidt did not, in his answer, attack the judgment. He did not seek to have it reopened and his liability limited to that portion incurred prior to his attempted transfer, and it is doubtful if he is now in a position to claim he was relieved by his assignment in any event. There is no defense of defect of parties, and no claim now that the other stockholders should be brought in. The stipulation of the defendant Schmidt and the payment by him to a third party debar him from maintaining that undue advantage may be given to the plaintiff over other creditors of the corporation, and the judgment aims to guard their rights.

The judgment should be affirmed, with costs.

All concurred.

Judgment affirmed, with costs.