# CHARLESTON.

THE BILLMYER LUMBER COMPANY *v.* MERCHANTS COAL COMPANY OF WEST VIRGINIA.

Submitted June 11, 1909.   Decided February 1, 1910.

1.   CORPORATIONS—*Assumption of Debts of Another Company—Liability for Unliquidated Damages.*

The assumption by one corporation of all the indebtedness of another of whatsoever kind and its agreement to pay and discharge the same, when due, as the consideration for the conveyance to it of all the property of another corporation, bind the former to pay all the liabilities of the latter, though some of them, such as demands for unliquidated damages, may not be debts in the technical sense of the term.   (pp. 698-9),

2.   SAME—*Transfer of Property—Assumption of Grantor's Debts—Right of Grantor's Creditors to Charge Property.*

When property has been conveyed in consideration of the assumption, by the grantee, of all the indebtedness of the grantor, any creditor of the latter may charge the property in the hands of the grantee with his debt and subject the same to payment thereof.   (p. 700).

3.   SAME—*Foreign Corporations—Right to Sue on Valid Contracts.*

The statutory provisions of this state, modifying the rule of comity and limiting the powers and capacities of foreign corporations in this jurisdiction, do not affect their rights to sue and make defense in actions or suits in the courts of this state, pertaining to contracts validly made.   (p. 702).

4.   SAME.

The loss by a foreign corporation of its previously acquired right to do business in this state does not affect its capacity to sue or be sued in respect to a contract made, or right vested, when it was lawfully doing business in the state.   (p. 704).

5.   SAME—*Foreign Corporations—Loss of Right to do Business in State—Effect on Right to Sue on Contracts Previously Made.*

If, after an action at law against a foreign corporation, rightfully doing business in the state, has been properly commenced, such corporation be deprived of its statutory privileges, the action may be prosecuted to judgment as effectually in all respects as if the defendant's right to do business in the state had not ceased.   (p. 704).

6.   SAME—*Foreign Corporations Excluded from State—Assumption of Debts by Another Company—Effect on Subsequent Judgment Against Excluded Corporation.*

In such case, the judgment is binding on a third party who, before rendition thereof, assumed the payment of the debt or liability involved in the action.   (p. 705).

7.   ACTION—*Cumulative Remedies—Dissolved Corporations—Remedies of Creditors.*

The provisions of chapter 53 of the Code, making the assets of expired, dissolved and insolvent corporations trust funds for the benefit of their creditors and stockholders, and authorizing suits in equity by creditors to wind them up, are not exclusive remedies and do not, of themselves, take away the right to proceed to judgment and execution.   (p. 704).

8.   PARTIES—*Suit to Charge Debt on Property Securing Bonds—Bondholders.*

In a suit in equity to charge a debt upon property, encumbered by mortgages to secure large issues of bonds, in which the trustees are clothed with ample powers to protect and enforce the rights of the holders of the bonds, it is unnecessary to make the bondholders parties, since the trustees, being parties, fully represent them.   (p. 707).

9.   APPEAL   AND   ERROR—*Equity—Review—Insufficient Process Against Non-resident.*

A bill in equity against a non-resident, as to whom no process other than an order of publication, duly published and posted, has been taken, cannot be taken for confessed as to such party; but, if a decree, erroneous in that respect, gives no relief against such party, it will be corrected without reversal, when in the appellate court for review on other grounds and not otherwise erroneous.   (p. 707).

Appeal from Circuit Court, Preston County.

Action by the Billmyer Lumber Company against the Merchants' Coal Company of West Virginia and others.   Judgment for plaintiff, and the mentioned defendant appeals.

*Modified and Affirmed.*

66 W. Va.

*P. J. Crogan,* for appellant.

*R. H. Gordan, Wm. MacDonald,* and *William G. Conley,* for appellee.

Poffenbarger, Judge:

The Billmyer Lumber Company, a co-partnership, obtained a decree in the circuit court of Preston county, against the property of the Merchants Coal Company of West Virginia, a corporation, organized under the laws of this State, for satisfaction of a judgment, rendered in its favor against the Merchants Coal Company of Baltimore City, a corporation, organized under the laws of the State of Maryland, and the said Merchants Coal Company of West Virginia has appealed.

The Merchants Coal Company of Baltimore City, a foreign corporation, having obtained the right to do business in this state, was sued at law by the Billmyer Lumber Company, on a contract for the sale, by the defendant to the plaintiff, of the standing timber on a certain tract of land, which the former violated. That action was begun on the 28th day of July, 1904. On the 15th day of December, 1904, said Merchants Coal Company of Baltimore City conveyed all of its property in West Virginia, including various tracts of coal lands and its rights and franchises, to the Merchants Coal Company of West Virginia. Sometime in the same year, but just when the record does not show, the Merchants Coal Company of Baltimore City was deprived of its right to do business in this state upon a *quo warranto* proceeding, because of its non-payment of its annual license taxes and non-compliance with the laws of the state, relating to foreign corporations. Notwithstanding this, the plaintiff continued to prosecute its action and obtained a verdict, on the 26th day of May 1906, and a judgment on the 24th day of October, 1906, for $5,000.00. It then followed the property of the old corporation into the hands of the new one, by the institution of this suit, basing its right to do so on the express assumption of the indebtedness of the old company by the new one, alleged actual and constructive fraud in the conveyance, and the implied trust in the assets of an insolvent corporation in favor of its creditors. The bill charges actual fraud, saying the conveyance was made with intent to hinder, delay and defraud the

grantor's creditors, and constructive fraud, saying it was voluntary. It also charges, in this connection, identity of officers and stockholders in the two corporations. Having alleged nonpayment of any consideration, it prays a discovery as well as relief by cancellation of the deed, appointment of a receiver, and enforcement of the alleged lien of the plaintiff. The old corporation had executed a mortgage on its real estate to Chas. R. Durbin, to secure a large issue of bonds. The new corporation executed a similar mortgage to the International Trust Company of Maryland, to secure another issue of bonds. These mortgagees are made parties to the bill, and the deed of conveyance and mortgages are exhibited with it. A demurrer, filed and overruled, assigned numerous grounds, and the answer denied fraud in fact or law as well as to the existence of any trust or lien, or right in any way to charge the property. It was excepted to on several grounds, but the exceptions seem to have been abandoned, as the decree takes no notice of them. These defenses were made by the Merchants Coal Company of West Virginia only. None of the other defendants appeared. The decree pronounced in the cause does not subject the real estate of the defendant to sale for the payment of the debt, nor require the defendant to pay it unconditionally. It declares the Merchants Coal Company of West Virginia a trustee as to the property conveyed to it and holds it bound to apply said property, or so much thereof as may be necessary to the satisfaction of the judgment, and declares the property liable to the payment thereof. It then adjudges, orders and decrees that said defendant "out of the property received by it by said deed of December 15, 1904, pay to the Billmyer Lumber Company" the debt with interest thereon, within thirty days from the date of the decree.

One contention, set up in the answer, if sound, would wholly defeat the object of the suit. It is, that the demand of the plaintiff, having been, at the date of the deed, an unliquidated claim for damages for the breach of a contract, was not a debt of the grantor, within the meaning of the recital of the deed, saying the property was conveyed "in consideration of the express assumption of, and the agreement by the said party of the second part to pay and discharge, when due, all of the indebtedness of said party of the first part, of whatsoever kind and to whomsoever due." It seems to us that the intention, on the part

of the grantee, to assume all the liabilities of the grantor, without respect to their form or nature, is plain. The deed says it assumed all of the indebtedness of whatsoever kind. This is a very broad expression. While a right to unliquidated damages may not be technically a debt, it is indisputably a liability, and the term "indebtedness" is not shown in the context to be limited to technical debts, such as bonds, notes and accounts. It is not only unlimited in this respect, but, on the contrary, is amplified and broadened by the phrase "of whatsoever kind." Moreover, the object and purpose of the deed, and considerations of justice and fairness, which are presumed to have been in the minds of the parties at the date of the conveyance, if their intent was not fraudulent, conform to this view and indicate its correctness. By that instrument, the Merchants Coal Company of Baltimore City divested itself of every particle of property and estate it had. Its right to do business in the state had been, or was about to be, revoked. It could no longer do business here, and, in order to conserve its property, it conveyed it to a new corporation. Thus, it became not only legally, but actually, incapable of paying any of its debts or satisfying any of its liabilities. According to the terms of the deed, it received no money in any degree adequate to answer its contingent liability to the plaintiff, for which the action was then pending. We must presume, therefore, that the intent to transfer, to the new corporation, all of its liabilities along with all of its property, is expressed by the recital in the deed, and that the grantee accepted the conveyance with that understanding.

Another contention is that the judgment obtained against the Merchants Coal Company of Baltimore City, after the loss of its right to do business in this state and the conveyance of all of its property to the appellant, is not binding, either on the question of liability or the amount of the damages, and it is insisted that the Merchants Coal Company of West Virginia had the right to litigate the question of liability and amount in an action at law. We are unable to concur in this view. Conceding, for the purposes of the argument, that the plaintiff could have sued the grantee in the deed at law, on its express assumption of the debts and liabilities of the grantor, treating this covenant as a contract made for its benefit, it is equally clear that it was not bound to do so, nor deprived of its right to sue the immediate party to

the original contract.  It takes three parties to effect a novation.
The Merchants Coal Company of Baltimore City could not re-
lieve itself of its liability to the Billmyer Lumber Company by
merely obtaining the agreement of the Merchants Coal Com-
pany of West Virginia to satisfy that demand.  It could thus
bind the Merchants Coal Company of West Virginia, but it
could not break or destroy the hold which the Billmyer Lumber
Company had upon it, without the consent of said company.  It
does not appear in any way that, prior to the institution of this
suit, the Billmyer Lumber Company ever agreed to release the
Merchants Coal Company of Baltimore City or to accept the
Merchants Coal Company of West Virginia as its debtor.  On
the contrary, it appears that no such agreement ever could have
been effected, for both of these corporations utterly denied all
liability and thus compelled the plaintiff to resort to the courts
for enforcement of its rights.

The charge of invalidity of the judgment stands upon
another ground also, namely, that after the revocation of
the right of the Merchants Coal Company of Baltimore
City to do business in this state, all proceedings against
it must necessarily have abated, wherefore a judgment acquired
after that date must be void.  In our opinion, this position is
also untenable.  Although the corporation lost its right to do
business in this state, it is not shown to have been dissolved or
in any way to have lost its corporate existence, if that would
make any difference.  For all that appears in this record, it
may be a live, active, solvent and prosperous corporation in the
state of its creation.  We know nothing against it except that it
has lost its right to do business in this state, has divested it-
self of all of its property and left this demand unprovided for,
except in the manner stated in the deed.  Although not entitled
to do business in this state any longer, it could be sued here
upon a demand of this kind, if service could be had upon it,
and it is not disputed that it was served with process in the ac-
tion at law while it was rightfully doing business within the
state.  It is not pretended it did not have the right to make the
contract on which it was sued at the time it was made, nor that
it was not actually and rightfully doing business in the state at
that time, and at the time of the institution of the action against
it.  An action to enforce a contract, lawfully made, may be in-
stituted in a state in which the plaintiff has not acquired the

right to do business, as in those instances in which the contract was made outside of the state and at a place at which it could be lawfully made. Likewise, such an action may be defended by a corporation in a state in which it has not acquired the right to do business. The prosecution and defense of actions, respecting valid contracts, do not constitute doing business within the meaning of the statutes, restricting the right of foreign corporations. *Typewriter Co.* v. *Piggott,* 60 W. Va. 532; 19 Cyc. 1280, citing numerous decisions from a great many of the states. The contract being valid and the jurisdiction having attached before the right to do business in the state was lost, we know of no principle upon which the defendant could defeat that jurisdiction by withdrawing from the state. Having once attached, it continued. The privilege taken away by the *quo warranto* proceeding was no greater than that granted by the statute upon compliance with the conditions therein named. That was the privilege of doing business in this state. Under the rule of comity, it had certain other rights which the statute did not take away nor destroy, and among these was the right to sue upon a valid contract, and also the right to make defense in any action instituted against it. As these were never inhibited by the statute, they cannot be deemed to have been affected or taken away by the revocation of the privilege that had vested under the restrictive statute. Neither the statute nor the revocation of the privilege touched these rights or in any way circumscribed or limited the jurisdiction of the court. Therefore, a jurisdiction which had vested, was not destroyed by the revocation of the privilege. Any other conclusion would be so clearly unjust and impolitic that the legislature cannot be deemed to have intended it, and, if it did, the statute might be, to that extent, unconstitutional. When the contract was made, the remedy for its enforcement was a part of it. Surely, the legislature did not intend to destroy or impair the contract, and to deny all remedy for its enforcement in the courts of this state and compel the obligee to resort to the courts of another state, would amount to a clear impairment of its obligation. Remedies may be altered or limited by the legislature, but not entirely denied. Story's Const., sec. 1385; *Piggot* v. *Typewriter Co.,* 60 W. Va. 532. Besides, it is against settled and uniform state policy to compel a citizen to resort to a foreign state to collect

his debt, when the cause of action arose in the state and the
debtor has property therein. *McClung* v. *Seig*, 54 W. Va.
467. This view seems to be within the spirit of the statutes,
relating to foreign corporations. Upon complying with cer-
tain conditions, they are granted the same rights, powers and
privileges and subjected to the same regulations, restrictions
and liabilities that are conferred and imposed on corporations
chartered under the laws of this state. Code, ch. 54, sec. 30. On
the revocation of the license to do business in this state, such
a corporation must necessarily wind up its business here, pay
its debts and distribute its assets among its stockholders, re-
move the same from the state, or let them remain idle and in-
active. The revocation, therefore, works a *quasi* dissolution of
the foreign corporation. It is in the same situation, in this state,
as if its charter had expired, or been revoked for cause. In
respect to its corporate business and holdings in this state, it
is legally dissolved. Though it may still exist in another state
as an entity, it ceases to be recognized as such here for the pur-
pose of carrying on its business. Its corporate transactions as
effectually cease here as if it were dissolved. Its property can
be no longer handled for its general corporate purposes. We
think, therefore, the legislature, in subjecting it to the liabilities
imposed upon domestic corporations, intended to subject it, on
the revocation of its privilege, to the general laws relating to
the winding up of domestic corporations, in so far as they are
applicable. By these laws, a corporation, after dissolution,
still remains a corporation, in contemplation of law, for the
purposes of suits to collect debts against it, actions by it to
collect debts due it and the settlement and distribution of its
assets. Code, chapter 53, sections 57, 59. These sections apply
to expired, as well as dissolved, corporations, and solvent ex-
pired, or dissolved, corporations, as well as insolvent. When,
for any reason, a corporation has no longer right to exist, dis-
solution, payment of debts and distribution of surplus, in
some form, inevitably result. A similar statute in New Jersey
has been declared to be applicable to foreign corporations, do-
ing business in the state. *Albert* v. *Land &c. Co.*, 23 Atl.
Rep. 8.

It is more seriously and urgently insisted, by counsel for the
appellant, that the only remedy left to the plaintiff, on the

revocation of the license of the defendant, was a suit in equity, under section 58 of chapter 53 of the Code or some other section of that chapter, wherefore it was bound to dismiss its action at law, on the happening of that event, and seek relief in equity by convening all the creditors and stockholders. We do not regard the remedies given by those sections as exclusive. They are not so in terms. Corporations have power to sue and may be sued. The right to sue a corporation on a contract made by it, when it has power to bind itself, is a part of the contract and will not be deemed to have been taken away or curtailed, in the absence of clear legislative intent to limit or destroy it. The contract carries with it the right to reduce any demand, arising out of the same, to judgment and make it a lien upon the property of the debtor, the judgment itself being a lien on the real estate and an execution thereon a lien upon the personal property. Nothing in any of the statutes relied upon suggests intention to destroy these rights, incident to the contract. While they do say the assets of an expired, dissolved or insolvent corporation shall be administered as a trust fund for the benefit of the creditors and stockholders, and the creditors must be satisfied first, they do not, either in express terms or by implication, place any restraint upon the right of creditors to pursue any other remedies, afforded them by the law, nor undertake to prevent them from acquiring preferences in any manner, or to any extent, allowed by the law in the case of natural persons.

Our conclusion, therefore, is that the revocation of the privilege of the defendant corporation to do business in this state left it in the situation of an expired domestic corporation in respect to actions pending, or subsequently brought, against it; that the remedies in equity, given to creditors of corporations by the provisions of chapter 53 of the Code are not exclusive and do not prevent recovery of judgments at law against corporations after expiration of their charters; and that the circuit court did not lose the jurisdiction over the defendant which had attached before the revocation of its right to do business in the state.

The conclusions just announced may include the further proposition that, on the expiration of the right of a foreign corporation to do business in this state, its assets, within the

jurisdiction of the courts of the state, may be treated and proceeded against as the assets of an expired or dissolved domestic corporation, and the well known trust fund theory, recognized by courts everywhere, applied to the administration of its assets, treating the corporation in view of its conveyance to a third party of all of its assets, without other provision for its debts than the assumption thereof by the grantee, as an insolvent corporation. This seems necessarily and logically to follow. Its rights, powers, privileges, burdens and liabilities, on its admission into the state, were the same as those of domestic corporations. This legislative declaration of liability seems broad enough to make its assets, on the expiration of its right to do business in the state, a trust fund for the satisfaction of its indebtedness, because that liability is imposed upon the asets of expired or dissolved domestic corporations, whether solvent or insolvent, and cannot be defeated by appropriation of the assets on the part of the stockholders to themselves in any form, or a gift thereof to a stranger. If this view of the statute is correct, there can be no doubt of the right of the plaintiff to follow up this property in a court of equity and subject it to the payment of its debt in the hands of the grantee in the deed, for, having actually paid none, or only a portion, of the consideration, it is not a complete purchaser, nor a purchaser without notice of the indebtedness. In this case, the assumption of the indebtedness, including the demand of the plaintiff, constituted practically all of the consideration. Until the indebtedness has been paid, the consideration will not have been actually received by the grantor. The liability of property, so conveyed by one corporation to another, to the debts of the grantor is well established by authority everywhere  Helliwell on Stock & Stockholders, secs. 14, 15; Morawetz on Corp., secs. 790, 791, 954, 955; Angell & Ames on Corp., secs. 600-604; Noyes on Inter-Corp. Relations, sec. 125; *Swan Land Co.* v. *Frank,* 148 U. S. 603; *Scott* v. *Neely,* 140 U. S. 106; *Upton* v. *Trippilcoch,* 91 U. S. 45; *Richardson's Exr.* v. *Green,* 133 U. S. 30; *Peters* v. *Bain,* 133 U. S. 670; *Clark* v. *Beaver,* 139 U. S. 96; *Fogg* v. *Blair,* 139 U. S. 118; *Graham* v. *Railroad ·Co.,* 102 U. S. 148; *Hollins* v. *Coal & Iron Co.,* 150 U. S. 371; *Hospes* v. *Mfg. & Car Co.,* 48 Minn. 174. While liability on this ground seems clear, it is unnecessary to

invoke the principle for the decision of this case, and, as the subject is one of great importance, we hereby merely suggest this view and actually place the liability upon another ground.

The property sought to be charged in this suit was conveyed in consideration of an express assumption of, and agreement to pay, the demand of the plaintiff. The debt so assumed either became, in equity, an actual lien upon the property conveyed or conferred upon the creditor the power to charge his debt upon the property as a lien by a suit in equity for the purpose. Whether, from the date of the deed, it constituted such a lien as would bind subsequent purchasers and creditors, we are not called upon to determine, but it is well settled that the creditor can charge the land in the hands of the grantee. *Matheny* v. *Ferguson,* 55 W. Va. 656; *Vanmeter* v. *Vanmeter,* 3 Grat. 148; *Williard* v. *Worsham,* 76 Va. 392; *Tyson & Others* v. *Railway Co.,* 15 Fed. Rep. 763; *Clyde* v. *Simpson,* 4 O. St. 445; *Harris* v. *Fly,* 7 Paige (N. Y.) 421; *Hallett* v. *Hallett,* 2 Paige (N. Y.) 14; *Nichols* v. *Glover,* 41 Ind. 24; *King* v. *Denison,* 1 Ves. & Bea. 272. "Another class of implied liens or trusts arises where property is conveyed *inter vivos,* or is bequeathed or devised by last will and testament, subject to a charge for the payment of debts or other charges in favor of third persons. In such cases although the charge is treated as between the immediate parties to the original instrument as an express trust in property, which may be enforced by such parties or their proper representatives, yet as between the trustee and the *cestuis que trust* who are to take the benefits of the instrument it constitutes an implied or constructive trust only,—a trust raised by courts of equity in their favor, as an interest *in rem* capable of being enforced by them directly by a suit brought in their own names and right." Story's Eq. Jur., sec. 1244. It is not difficult to reconcile this conclusion with principles of law and equity. Where the statute of frauds requires the declaration of a trust to be in writing, the recital of the assumption of the indebtedness in the deed is held to be sufficient evidence in writing of the declaration. Equity looks upon the unpaid consideration as so much of the purchase money of the property appropriated by the debtor to the payment of his debt, and left in the hands of the grantee to be applied thereto. Therefore, by the contract, an express duty is devolved

upon the grantee. He agrees with the grantor to retain so much of the consideration and apply it to the satisfaction of the debt. At the same time, until the debt is paid, he withholds a part of the purchase money of the land and has property of the grantor for which he has not paid. In view of the purpose of the conveyance, the appropriation of the purchase money to the debt and the duty assumed by the grantee, the intent to establish, as between them, an express trust, is inferred. As the creditor is no party to the deed and is not bound by the contract in all respects, this may afford ground for calling the trust in his favor only an implied one. Prior to the statute, Code, chapter 71, section 2, giving right of action to a person on a contract made for his benefit, but to which he was not a party, the creditor in such a case as this would have had no legal remedy and could not have availed himself of the benefit of the contract otherwise than by a suit in equity, even if he could have done that. *Ross* v. *Milne,* 12 Leigh 204, and *Jones* v. *Thomas,* 12 Grat. 96. The statute just referred to enables him to sue at law on such a contract and also to take "An immediate estate or interest in, or the benefit of a condition respecting, any estate" under an instrument to which he is not a party, if made for his benefit. His lien may possibly stand on this. Whatever the basis of it, or whether express or implied, there is a lien in favor of the creditor under the circumstances, disclosed here.

There is nothing in the objections that the stockholders of the foreign corporation and the bond holders of both should have been made parties. The Merchants Coal Company of Baltimore City had parted with all interest in the property the plaintiff seeks to charge in this suit, and it was not a bill to wind up either corporation. Hence, the stockholders of the old corporation were not interested and no relief was asked against those of the new. The bond holders were fully represented by the trustees, as the mortgages vested broad and ample powers of representation in them. In each of these instruments, the trustee was expressly clothed with authority to represent and act for the bond holders in all matters pertaining to their security and enforcement of their rights under the mortgages. Jones Corp. & Mort., sec. 398.

As the International Trust Company was a foreign corporation, proceeded against by order of publication, and did not

appear, it was error to decree the bill taken for confessed as to it, but the decree affects it no further. It is not otherwise a decree *in personam,* since it affects only the property involved, and substituted service suffices for that. The recital only imports service of process upon that defendant, contrary to the fact. This will be corrected, but without cost, as no objection was made on account thereof in the court below.

Lack of a reference and adjustment of liens, with respect to amounts and priority, is unavailing as a ground of error, since there is no decree of sale of the property nor any particular status, with reference to other liens, accorded the one declared in favor of the plaintiff. Nothing has been decided, so far, except the liability of the property to the lien of this debt. A reference may become necessary in the further progress of the cause. That will depend upon the course hereafter pursued by the appellant. If it pays the debt and costs for which it and the property in its hands are liable, neither a reference, sale nor any further decree will be necessary.

Failure to demand payment before suing has nothing to do with the subject of cost. It sometimes bars an action, as in the case of a bailment, but not one founded upon such a cause of action as we have here. *Kuykendall* v. *Fisher,* 61 W. Va. 87.

For the reasons stated, the decree will be corrected by inserting therein the words, "upon the order of publication duly published and posted as to" before the words, "International Trust Company of Baltimore City," and, as so amended, it will be affirmed.

*Modified and Affirmed.*