THE JOHN MILLER COMPANY, a Corporation, v. THE HAR-
VEY MERCANTILE COMPANY, Ltd., a Corporation; Sayre,
Strong Grain & Merchandise Company, a Corporation; Calgary
Colonization Company, a Corporation; H. H. Phillips, A. J.
Sayre, L. P. Strong, T. L. Beiseker, James T. Morris, Individ-
ually and as Trustees for the Corporations hereinafter Named,
Creditors of the Harvey Mercantile Company, Ltd., a Corpora-
tion; Tibbs, Hutchings, & Company, a Corporation; Empire
Cream Separator Company, a Corporation; Marshall Wells Hard-
ware Company, a Corporation; Great Northern Implement Com-
pany, a Corporation; Northern Shoe Company, a Corporation;
Pure Oil Company, a Corporation; Standard Oil Company, a
Corporation; Singer Sewing Machine Company, a Corporation;
International Harvester Company, a Corporation; Winston, Har-
per, Fisher Company, a Corporation; Patterson & Stevenson Com-
pany, a Corporation, also Known as T. W. Stevenson Company,
a Corporation; Stacy Mercantile Company, a Corporation; F.
Mayer Boot & Shoe Company, a Corporation; Twin City Sepa-
rator Company, a Corporation; Northwestern Bedding Company,
a Corporation; Miller, Watt, & Company, a Corporation, Defend-
ants,

and

GREAT NORTHERN IMPLEMENT COMPANY, a Corporation;
Empire Cream Separator Company, a Corporation; Patterson &
Stevenson Company, a Corporation; Winston, Harper, Fisher
Company, a Corporation; Marshall Wells Hardware Company, a
Corporation; F. Mayor Boot & Shoe Company, a Corporation;
Northern Shoe Company, a Corporation; Pure Oil Company, a
Corporation; Singer Sewing Machine Company, a Corporation;
Twin City Separator Company, a Corporation; Stacy Mercantile
Company, a Corporation, and James T. Morris, Appellants.

(165 N. W. 558.)

Sequestration — proceedings — defendants in — who may be joined as —
purpose of statute — insolvent corporation — assets of — general fund —
collecting into — payment of debts.

1. Under the sequestration proceedings which are authorized by § 7989 of the

Compiled Laws of 1913, not only may numerous fraudulent grantees be joined as defendants with the corporation itself, but all officers and stockholders and other persons who have incurred a liability to the corporation. The purpose of the statute is to provide a means for collecting into a general fund all of the assets of an insolvent corporation, so that not only the debt due to the petitioner may be paid, but that, if desired, all other debts of the concern, and that its affairs may be wound up.

**Debtor — preference right to pay — includes a corporation — statute.**

2. The word "debtor" in § 7218 of the Compiled Laws of 1913, which provides that "a debtor may pay one creditor in preference to another or may give to one creditor security for the payment of his demand in preference to another," includes corporations as well as general partnerships and individuals, and gives to corporations equally with individuals and general partnerships the general right to prefer one creditor above another.

**Complaint — allegations of — assets — assignment of — trustee — purpose of — transfer — illegal when.**

3. An allegation in the complaint that an assignment of certain of the assets of an insolvent corporation was made to a trustee "in trust to convert into cash and distribute the proceeds, less collection charges, among the certain defendant creditors, to apply on their claims against said corporation," does not show an illegal transfer; there being no allegation either that the payment was in full and would exclude such creditors from recovering any balance that might be due, or that there was or was expected to be any surplus which was to be repaid to the debtor corporation, or that a general assignment was made or attempted.

**Insolvent corporation — preference of creditors — assets — trust fund — for payment of debts — lien upon — assets — priority.**

4. Although an insolvent corporation may, as a general rule, prefer certain of its creditors, the assets of a corporation are nevertheless a trust fund for the payment of its debts to the extent that the creditors have a lien upon them which is prior in point of right to any claim which the stockholders or directors as such can have, and the courts should be astute to defeat any scheme or device which is calculated to withdraw this fund or in any way to place it beyond the reach of creditors.

**Complaint — cause of action — against directors and favored creditors — assets and property — beyond reach of plaintiff — scheme to place.**

5. A complaint states a cause of action against both the directors of an insolvent corporation and its favored creditors, which charges that a scheme was planned and participated in by all of the defendants to place all of the property and assets beyond the reach of the plaintiff creditor and other creditors similarly situated, to convey to the directors certain of the assets, and to make

unlawful payments thereto, and generally to divide all of its assets between the said directors and the said favored creditors.

Opinion filed November 14, 1917.   Rehearing denied December 14, 1917.

Action to sequestrate the assets of an insolvent corporation.

Appeal from the District Court of Wells County, *Honorable J. A. Coffey,* Judge.

Order for plaintiff overruling demurrers to complaint.

Order affirmed.

*Frank B. Dodge* and *Frank R. Hubacheck* and *Edward P. Kelly,* for appellants.

If the directors of a corporation have a right to give a preference, then their intent is wholly immaterial and no fraud can be predicated thereon.   If they acted with fraudulent intent and such was known to the defendants, such knowledge would not be material.   Knowledge of the intent of a seller by a purchaser may affect the sale, but not knowledge acquired by a creditor.   Lockren v. Rustan, 9 N. D. 43, 81 N. W. 63.

In order that a payment be or constitute a preference, the debtor must be insolvent or must, by the preferential payment, make himself insolvent.   Neither of these was effected here.   There is no averment of facts sufficient to show the essentials of a preference.   3 Clark & M. Priv. Corp. p. 2365; 1 Cook, Corp. 7th ed. § 9; Corey v. Wadsworth, 118 Ala. 488, 44 L.R.A. 766, 25 So. 503; Worthen v. Griffith, 59 Ark. 565, 43 Am. St. Rep. 50, 28 S. W. 286; Merced Bank v. Ivett, 127 Cal. 134, 59 Pac. 393.

"The assets of an insolvent corporation constitute a trust fund for the benefit of creditors only as between creditors and stockholders, and do not constitute a trust fund for ratable distribution among all its creditors, hence such a corporation may prefer a creditor."   John V. Farwell Co. v. Sweetzer, 10 Colo. App. 421, 51 Pac. 1012; Catlin v. Eagle Bank, 6 Conn. 233.

"A corporation may make a general assignment with or without preference."   Albany & R. Iron & Steel Co. v. Southern Agri. Works, 76 Ga. 135, 2 Am. St. Rep. 26; State Nat. Bank v. Union Nat. Bank, 168 Ill. 519, 48 N. E. 82.

"An insolvent corporation does not hold its property in trust or subject to a lien in favor of creditors in any other sense than does an individual debtor." Levering v. Bimel, 146 Ind. 545, 45 N. E. 775; Manton v. Seiberling, 107 Iowa, 534, 78 N. W. 194; Grand De Tour Plow Co. v. Rude Bros. Mfg. Co. 60 Kan. 145, 55 Pac. 848; Sargent v. Webster, 13 Met. 497, 46 Am. Dec. 743; Bank of Montreal v. J. E. Potts Salt & Lumber Co. 90 Mich. 345, 51 N. W. 512.

Corporate property is not held in trust in any proper sense of the term. Absolute control and power of disposition are inconsistent with the idea of a trust. Hospes v. Northwestern Mfg. & Car Co. 48 Minn. 174, 15 L.R.A. 470, 31 Am. St. Rep. 637, 50 N. W. 1117; Sells v. Rosedale Grocery & Commission Co. 72 Miss. 590, 17 So. 236; Pullis v. Pullis Bros. Iron Co. 157 Mo. 565, 57 S. W. 1095.

To the same effect are the following authorities: Teitig v. Boesman Bros. & Co. 12 Mont. 404, 31 Pac. 371; M. A. Seeds Dry-Plate Co. v. Heyn Photo-Supply Co. 57 Neb. 214, 77 N. W. 660; Thomson-Houston Electric Light Co. v. Henderson Electric Light Co. 116 N. C. 112, 21 S. E. 951; Moller v. Keystone Fibre Co. 187 Pa. 553, 41 Atl. 478; Weyeth Hardware & Mfg. Co. v. Jones-Spencer-Bateman Co. 15 Utah, 110, 47 Pac. 604; Pyles v. Riverside Furniture Co. 30 W. Va. 123, 2 S. E. 909; Hinz v. Van Dusen, 95 Wis. 503, 70 N. W. 657; Conway v. Smith Mercantile Co. 6 Wyo. 468, 46 Pac. 1084; Hollins v. Brierfield Coal & I. Co. 150 U. S. 371, 37 L. ed. 1113, 14 Sup. Ct. Rep. 127; American Exch. Nat. Bank v. Ward, 55 L.R.A. 356, 49 C. C. A. 611, 111 Fed. 782; 5 Thomp. Corp. § 6492.

*Pierce, Tenneson, & Cupler,* for respondent.

There was a preference here, and it was an unlawful one—a scheme designed by the stockholders, directors, and certain creditors, to wholly defeat the plaintiff's claim.

The scheme was to wind up the business of the corporation, and if it was then insolvent such scheme rendered it so. Comp. Laws 1913, §§ 4541–4544, 4557, 4560, 4565, 4567, 4568, 7968, subds. 2, 5, 7989–8013; N. Y. Consol. Laws, chap. 23, §§ 100–115, 130–136.

The assets of a corporation are a "trust fund" for the benefit of the creditors and the stockholders in the order named, the moment the corporation becomes insolvent. 10 Cyc. 1246, 1249; 2 Morawetz, Corp. §§ 780 et seq.; 5 Thomp. Corp. §§ 6492, and 6496; 3 Clark

& M. Priv. Corp. § 780; Ford v. Plankinton Bank, 87 Wis. 370, 58 N. W. 766; Adams & W. Co. v. Deyette, 8 S. D. 119, 31 L.R.A. 497, 59 Am. St. Rep. 751, 65 N. W. 471; Furber v. Williams-Flower Co. 21 S. D. 228, 8 L.R.A.(N.S.) 1259, 111 N. W. 548, 15 Ann. Cas. 1216; 3 L.R.A. Ex. Anno. (vols. 1–70), p. 1045; Buck v. Ross, 68 Conn. 29, 57 Am. St. Rep. 61, 35 Atl. 763; Sabin v. Columbia River Lumber & Fuel Co. 25 Or. 15, 42 Am. St. Rep. 756, 34 Pac. 692, 35 Pac. 854; Larrabee v. Franklin Bank, 35 Am. St. Rep. 774 and note, 114 Mo. 592, 21 S. W. 747; 8 Thomp. Corp. p. 679; Adam Roth Grocery Co. v. Hotel Monticello Co. 148 Mo. App. 513, 128 S. W. 542; Brown v. Wilmington & B. Leather Co. 9 Del. Ch. 39, 74 Atl. 1105.

"The corporate assets are converted into a 'trust fund' for the benefit of creditors, where the corporation has ceased to do business or to exericise its franchises." 8 Thomp. Corp. p. 681; Voightman & Co. v. Southern R. Co. 123 Tenn. 452, 131 S. W. 982, Ann. Cas. 1912C, 211.

The "trust fund" doctrine applies in some jurisdictions to a corporation which has ceased doing business. Harle-Hass Drug Co. v. Rogers Drug Co. 19 Wyo. 35, 113 Pac. 791, Ann. Cas. 1913E, 181.

"A preferential deed of trust executed by a private trading corporation after its insolvency, ceasing to carry on its business without any intention of resuming business, is void as against unsecured creditors." Lyons-Thomas Hardware Co. v. Perry Stove Mfg. Co. 22 L.R.A. 802, and note, 86 Tex. 143, 24 S. W. 16.

A corporation may be deemed insolvent when it is unable to meet its pecuniary obligations as they mature. Benner v. Scandinavian American Bank, 73 Wash. 488, 131 Pac. 1149, Ann. Cas. 1914D, 702, 706; 4 Clark & M. Priv. Corp. § 780C; Miller v. Gourley, 65 N. J. Eq. 237, 55 Atl. 1083; Empire State Trust Co. v. William F. Fisher & Co. 67 N. J. Eq. 602, 60 Atl. 940, 3 Ann. Cas. 393; American Handle Co. v. Standard Handle Co. — Tenn. —, 59 S. W. 709, and other cases; Tatum v. Leigh, 136 Ga. 791, 72 S. E. 236, Ann. Cas. 1912D, 216.

There can be no valid preference of a corporate debt due a director or guaranteed by him. 5 Thomp. Corp. §§ 6504, 6520, pp. 5129, 5130; 3 Clark & M. Priv. Corp. §§ 786, 787b, pp. 2411, 2414, 2419;

8 Thomp. Corp. § 6207, p. 683; Buck v. Ross, 57 Am. St. Rep. 60, and note 67, 68 Conn. 29, 35 Atl. 763; 3 Thomp. Corp. §§ 2951, 2958, 2963, pp. 2109, 2117, 2121, 2122; Bosworth v. Allen, 168 N. Y. 157, 55 L.R.A. 751, 85 Am. St. Rep. 667, 61 N. E. 163.

"The directors of a corporation who distribute all or substantially all of its assets among themselves, the stockholders and favored creditors, to the detriment of its general creditors, are personally liable to refund the amount so distributed, up to the amount of the unpaid debts." Bosworth v. Allen, 168 N. Y. 157, 55 L.R.A. 761, 85 Am. St. Rep. 667, 61 N. E. 163; Darcy v. Brooklyn & N. Y. Ferry Co. 26 L.R.A.(N.S.) 267, and note, 196 N. Y. 99, 134 Am. St. Rep. 827, 89 N. E. 461; White, P. & P. Mfg. Co. v. Henry B. Pettes Importing Co. 30 Fed. 864; Mills v. Hendershot, 70 N. J. Eq. 258, 62 Atl. 542; Gilbert v. Finch, 173 N. Y. 455, 61 L.R.A. 807, 93 Am. St. Rep. 623, 66 N. E. 133; McIver v. Young, 144 N. C. 478, 119 Am. St. Rep. 970, 57 S. E. 169; Re National Funds Assur. Co. L. R. 10 Ch. Div. 118, 48 L. J. Ch. N. S. 163; Moxham v. Grant [1900] 1 Q. B. 88, 69 L. J. Q. B. N. S. 97, 48 Week. Rep. 130, 81 L. T. N. S. 431, 16 Times L. R. 34; Hurd v. New York & C. Steam Laundry Co. 167 N. Y. 89, 60 N. E. 327.

"One who receives assets of a corporation upon its dissolution is bound to respond to its creditors to the extent of the assets so received in a suit by them to reach the assets or their value." Williams v. Commercial Nat. Bank, 49 Or. 492, 11 L.R.A.(N.S.) 857, 90 Pac. 1012, 91 Pac. 443; Sharples Co. v. Harding Creamery Co. 78 Neb. 795, 11 L.R.A.(N.S.) 863, 111 N. W. 783; Atlantic & B. R. Co. v. Johnson, 11 L.R.A.(N.S.) 1119, 1131, and note, 127 Ga. 392, 56 S. E. 482; Tiger v. Rogers Cotton Cleaner & Gin Co. 96 Ark. 1, 30 L.R.A.(N.S.) 694, 130 S. W. 585, Ann. Cas. 1912B, 488; Darcy v. Brooklyn & N. Y. Ferry Co. 196 N. Y. 99, 26 L.R.A.(N.S.) 267, 134 Am. St. Rep. 827, 89 N. E. 461; Irvine v. New York Edison Co. 207 N. Y. 425, 101 N. E. 358, Ann. Cas. 1914C, 441; Re Hicks, 170 N. Y. 195, 63 N. E. 276; Gilbert v. Finch, 173 N. Y. 455, 61 L.R.A. 807, 93 Am. St. Rep. 623, 66 N. E. 133; McIver v. Young Hardware Co. 144 N. C. 478, 119 Am. St. Rep. 970, 57 S. E. 169; Re National Funds Assur. Co. L. R. 10 Ch. Div. 118, 48 L. J. Ch. N. S. 163; Mox-

ham v. Grant, [1900] 1 Q. B. 88, 69 L. J. Q. B. N. S. 97, 48 Week. Rep. 130, 81 L. T. N. S. 431, 16 Times L. R. 34.

The transfer is objectionable for the further reason that it provides for the payment of any surplus to the debtor, thus operating to place such surplus beyond the reach of nonassenting creditors and to hinder and delay them in the collection of their claims. Maclaren v. Kramar, 26 N. D. 256, 50 L.R.A.(N.S.) 714, 144 N. W. 85.

"The trustees of all deeds of trust on property sought to be sold and all creditors named therein are necessary parties." 6 Pom. Eq. Jur. §. 891, p. 1443; 20 Cyc. 708, 716; Bagley & S. Co. v. Lennig, 61 App. Div. 26, 70 N. Y. Supp. 242; Beals v. Buffalo Expended Metal Constr. Co. 49 App. Div. 589, 63 N. Y. Supp. 635; Cummings v. American Gear & Spring Co. 87 Hun, 598, 34 N. Y. Supp. 541; Proctor v. Sidney Sash, Blind & Furniture Co. 8 App. Div. 42, 40 N. Y. Supp. 454.

Bruce, Ch. J. This is an appeal from an order overruling a demurrer to a complaint.

The action is brought under articles 2 and 4 of the Code of Civil Procedure, and particularly §§ 7989 et seq. of the Compiled Laws of 1913, and is known as a sequestration proceeding, its purpose being to obtain an equal distribution of the property of an insolvent corporation among its various creditors.

The complaint alleges the incorporation of the defendant, the Harvey Mercantile Company, the ownership of its capital stock by the defendants Sayre, Strong, Beiseker and Sayre, Strong Grain & Merchandise Company; that on or about the 21st day of January, 1913, and the 3d day of February, 1913, the plaintiff, the John Miller Company, obtained judgments against the defendant Harvey Mercantile Company in the sum of about $5,222.87, and on which unsatisfied executions leave a balance of $4,665.38, with interest.

It further alleges that on the 3d day of November, 1910, the defendants Phillips, Sayre, Strong, and Beiseker were stockholders, directors, and managing officers of the said Harvey Mercantile Company, and did then and there, without dissolving and winding up said corporations and without paying or providing in any manner for the payment of it, the said John Miller Company, and with the intent

of defrauding it and such other creditors as were similarly situated, and hindering and delaying them in the execution of their judgments and claims, wrongfully and unlawfully assigned and delivered to the defendants James T. Morris, as agent of the defendant creditors, or to themselves the said Phillips, Sayre, Strong, & Beiseker, or all of them, in trust to convert into cash and to distribute the proceeds among the said defendant creditors, all of the notes, bills receivable, and accounts of the defendant corporation of the face value of $26,000 and $11,000 in money, and also traded the stock of merchandise of said corporation of the alleged value of $32,800 for an equity in real estate in Canada, which it caused to be conveyed, and to be held in the name of the Calgary Colonization Company, all of the stock of which was and is owned by the said Phillips, Sayre, Strong, and Beiseker, and of which the said defendants were and are officers and directors, and unlawfully transferred and conveyed to the defendant H. H. Phillips the balance of the corporate assets of said Harvey Mercantile Company, which remained in the state of North Dakota, all of such transfers being made without any consideration passing to the said corporation; that all of such transfers were made in furtherance of the same fraudulent and unlawful scheme, and were intended to and did effectually place all of the property and assets of said corporation beyond the reach of the said John Miller Company and other creditors similarly situated by the ordinary process of law; that each of the persons and corporations who took said property and money had knowledge, prior to the transfer, of the fraudulent and unlawful scheme, and participated therein; that by the acts of the defendants, all of the property belonging to the said Harvey Mercantile Company was divided and transferred, and no property was left for the payment of the claims and judgments of the said plaintiff John Miller Company and others; and that said Harvey Mercantile Company was at the times thereof, and ever since has been and now is, insolvent, and has never since said time conducted any business, and that the said John Miller Company has no adequate remedy at law in the premises.

It further alleges that the defendant James T. Morris received said cash payment of $11,000, and about $25,000 from the proceeds of the notes, bills, and accounts, and has paid over and distributed about $21,000 to a number of the defendants named, and that the defendants

James T. Morris, H. H. Phillips, A. J. Sayre, L. P. Strong, and T. L. Beiseker, have in their possession or control notes, bills, and accounts of the value of about $8,889, and the German State Bank of Harvey has of these notes the sum of the face value of $7,102 for collection.

The complaint further alleges that the said stock of merchandise represents only a part of the purchase price of the Canadian land and that the balance thereof was paid by the defendants Phillips, Sayre, Strong, and Beiseker or the said Calgary Colonization Company, and that the management and disposition of said real estate has been in the defendants' name, and that the defendants by such act intended to place the property beyond the control of the court.

It further alleges that all of the capital stock of the said Harvey Mercantile Company was not fully paid for, and that the stock was issued to the defendants Phillips, Sayre, Strong and the Strong Grain & Merchandise Company, with the knowledge and without the dissent of the said defendants Phillips, Sayre, Strong, and Beiseker.

It further alleges that the defendants Phillips, Sayre, Strong, and Beiseker, when acting as officers and directors of the defendant the Harvey Mercantile Company misused the assets of said company and distributed the same unlawfully, and between the years 1906 and 1910 paid to the defendant H. H. Phillips large sums of money of the alleged sum of $5,000 in excess of the compensation provided for by the by-laws and resolutions, and the indebtedness of said corporation, to the said Phillips for his salary and commission when acting for said company.

The complaint further alleges that the defendants Phillips, Sayre, Strong, and Beiseker, while directors of said Harvey Mercantile Company, during the years 1906 to 1910 inclusive, unlawfully paid to themselves and to other stockholders large sums of money, the exact amount being unknown.

It further alleges that in November, 1910, said defendants H. H. Phillips, A. J. Sayre, L. P. Strong, and T. L. Beiseker decided to wind up the affairs of the corporation, and then and there, without dissolving and winding up the affairs of said corporation in the manner provided by law and without paying or providing for the payment of the claims of the plaintiff, divided and distributed all of the capital stock, property, and assets of said corporation among themselves and

certain other creditors of said corporation whom they thereby sought to favor and prefer; and that ever since said time said corporation has owned no property, has done no business, and the plaintiff has been unable to enforce the collection of its said judgments.

The complaint further alleges that between the years 1906 and 1910 the four defendants named created debts on behalf of and against said corporation beyond the amount of the subscribed capital stock.

It then prays that the transfers mentioned be adjudged fraudulent, null, and void, and that the defendants and each of them be held to hold such property and money as trustees for the plaintiff and other creditors similarly situated; that said defendants be required to reassign and repay said money and property to a receiver to be appointed, and that in the event of their refusal so to do that the plaintiff have judgment against the defendants and each of them for the value of said property; that the defendants and each of them be required to account for the money and property of the defendant received by them; that the defendants Phillips, Sayre, Strong, and Beiseker be required to account for their acts as directors in relation to their creation of debts, payments of money, and payment of dividends, and the issuance of the capital stock; that a receiver be appointed if necessary; and that during the pendency of the action the defendants be enjoined from further transferring, assigning, and disposing of any of the assets of said corporation.

To this complaint demurrers are interposed by the Great Northern Implement Company and the other creditors to whom property had been transferred, and whose debts had been paid, and for whose benefit the alleged transfers of land had been made.

In support of these demurrers the defendants urge that the first cause of action is double and multifarious; that it contains matters for and on account of which relief is first asked against James T. Morris as agent and trustee of certain creditors, together with the creditors whom he represented because of an alleged preference given them as creditors of the Harvey Mercantile Company by Phillips, Sayre, Strong, and Beiseker, while acting as directors of the said Harvey Mercantile Company, to accomplish which preference they transferred certain property of said company to said James T. Morris, as trustee; and, second, against Phillips, Sayre, Strong, and Beiseker for diverting

certain other property of the Harvey Mercantile Company to their own use through or by an exchange for land in Canada, of which they, said directors, were stockholders.

They claim that the second cause of action is to recover from Phillips, Sayre, Strong Grain & Merchandise Company the difference between the par value of the stock of the Harvey Mercantile Company subscribed for by them, and the amount paid therefor.

They claim that the 4th cause of action is to recover from Phillips, Sayre, Strong, and Beiseker for failure and neglect to perform their duties as officers and directors, and for their negligent mismanagement of the business of the company, and for suffering and allowing its money to be diverted, and especially in the payment to Phillips of money not due him.

They claim that the 6th cause of action is for relief against Phillips, Sayre, Strong, and Beiseker for moneys divided and paid to themselves, or to some of them, in the form of dividends which did not arise from the surplus profits of the business. They claim that the 6th cause of action is for relief against Phillips, Sayre, Strong and Beiseker for having, while acting as directors, created debts against said corporation beyond the amount of the subscribed capital stock.

They claim that various claims for relief as against the defendants referred to in the third, fourth, fifth, and sixth causes of action, are all to the end of paying the claim of the John Miller Company.

They claim that the appellants Morris and the creditor defendants are brought into the case and affected by averments contained in the first cause of action only, and by a part only of this; that the creditor defendants are therein charged with having received a preference out of certain property of the Harvey Mercantile Company, and other defendants, directors, with having diverted and appropriated certain other property to their own individual use.

They in short contend: (1) That the complaint does not state facts sufficient to constitute a cause of action; and (2) that several causes of action have been improperly united.

If it were not for the peculiar nature of the proceedings before us and for the peculiar nature of the statutes under which they are brought, we would have no doubt that several causes of action have been improp-

erly united.    Comp. Laws 1913, § 7466; Pom. Rem. & Rem. Rights, 2d ed. 473; Nevin v. Peoples, 23 N. D. 202, 136 N. W. 73.

The proceeding, however, is what is known as a sequestration proceeding, and is brought under special provisions of the Compiled Laws of 1913, which provide that:

Section 7989. "Whenever a judgment shall be obtained against any corporation incorporated under the laws of this state and an execution issued thereon shall have been returned unsatisfied in whole or in part, the judgment creditor or his legal representative may maintain an action to procure a judgment sequestrating the property of a corporation and providing for a distribution thereof."

Section 7995. "In an action against a corporation upon a claim for which its stockholders, directors, trustees or other officers, or any of them, are liable by law in any event or contingency, one or more or all of the persons so liable may be made parties defendant by the original or by an amended or supplemental complaint; and their liability may be declared and enforced by the judgment in such action."

Section 7999. "Upon a final judgment being rendered in any action under this article, the court shall cause a just and fair distribution of the property of such corporation and of the proceeds thereof to be made in the order prescribed in § 7387."

Section 8000. "In all cases in which the directors or other officers of a corporation, or the stockholders thereof shall have been made parties to an action in which judgment shall be rendered, if the property of such corporation shall be insufficient to discharge its debts, the court shall proceed to compel each stockholder to pay in the amount due and remaining unpaid on the shares of stock held by him, or so much thereof as shall be necessary to satisfy the debts of the corporation.    If the debts of the corporation, or any part thereof, shall still remain unsatisfied, the courts shall proceed to ascertain the respective liabilities of the directors or other officers and of the stockholders and adjudge the amount payable by each and enforce the judgment as in other cases."

These sections, and in fact §§ 7986–8013 of the North Dakota Compiled Laws of 1913, seem to have first appeared in the statutes of New York and (as they were not a part of the original Field Code) to have been adopted by us from that state.    See N. Y. Consol. Laws,

§§ 90–92, 100–115 and 130–136, chap. 23; N. Y. Code Civ. Proc. §§ 1781–1783. Almost contemporaneously with their adoption by us, and in an unbroken line of decisions since that time, they were there examined and construed, and in such a manner as to allow a joinder such as that which is before us. See Cummings v. American Gear & Spring Co. 87 Hun, 598, 34 N. Y. Supp. 541; Beals v. Buffalo Expended Metal Constr. Co. 49 App. Div. 589, 63 N. Y. Supp. 635; Bagley & S. Co. v. Lennig, 61 App. Div. 26, 70 N. Y. Supp. 242; Proctor v. Sidney Sash, Blind & Furniture Co. 8 App. Div. 42, 40 N. Y. Supp. 454.

These authorities, though not necessarily conclusive upon us, are highly persuasive, and, in our opinion, express both a logical and practical rule, and one which we elect to follow. The statutes in short are sequestration statutes. Their purpose is to provide a means for collecting into a general fund all of the assets of the insolvent corporation, so that not only the debt due to the petitioner, but, if desired, its other debts, may be paid, and also, if desired, its affairs may be wound up. Sections 7995 provides that stockholders and officers who are liable by law in any event or contingency may be made parties defendant, and the term "sequestrating," which is used in § 7989, must, if its derivation be considered, be held to involve a seeking out as well as a setting apart. The action or proceeding which is authorized by our Code is similar to a creditor's bill. Its object and purpose is single, and that is to collect into a common fund the assets of the corporation. Such being the case, not only may numerous fraudulent grantees be joined as defendants with the corporation itself, but all those officers and stockholders and others who have incurred a liability to the corporation. Different personal issues may, it is true, be separated in the discretion of the court, and some, perhaps, if desired, submitted to the judgment of juries, but the proceeding is an entirety. Proctor v. Sidney Sash, Blind & Furniture Co. 8 App. Div. 42, 40 N. Y. Supp. 454; 7 Words & Phrases, 6419; Bagley & S. Co. v. Lennig, 61 App. Div. 26, 70 N. Y. Supp. 242; Cummings v. American Gear & Spring Co. 87 Hun, 598, 34 N. Y. Supp. 54; Beals v. Buffalo Expanded Metal Constr. Co. 49 App. Div. 589, 63 N. Y. Supp. 635; 6 Pom. Eq. Jur. 89, 1443; 20 Cyc. 708, 716.

This brings us to a consideration of the real merits of the case and

of the complaint, and this is somewhat simplified by the fact that the defendant James T. Morris and the creditor defendants for whose benefit the alleged fraudulent and preferential conveyance to the said Morris was made alone appeal.

The complaint alleges that the defendants Sayre, Strong, Phillips, Beiseker and the Strong Grain & Merchandise Company were the owners of the capital stock of the defendant corporation, the Harvey Mercantile Company, and the said Phillips, Strong, Sayre, and Beiseker directors thereof; and that while acting as such directors the persons last mentioned transferred certain of the property of the said corporation to the defendant James T. Morris, as trustee for the creditor defendants and appellants, and certain other property to their own use by way of an exchange for land in Canada, the title to which was taken in the name of the Calgary Colonization Company of which they, the said directors, were stockholders. These conveyances, it is claimed, completely exhausted the assets of the Harvey Mercantile Company, and made it impossible for the plaintiff to collect its judgment, and were made for the purpose of cheating and defrauding the plaintiff and the other creditors of the Harvey Mercantile Company and without dissolving and winding up the affairs of said corporation in the manner provided by law, and for the purpose of dividing the assets of said corporation among the said directors and the said preferred creditors who were of the same class as the said plaintiff, the said John Miller Company.

The relief prayed for is that the said transfers and payments be adjudged fraudulent, and the money and property be held in trust for the plaintiff and the other creditors of the company, and that the property and money be reassigned, repaid, and retransferred to a receiver, and in default thereof personal judgments might be obtained. It is not claimed, however, that the debts of the creditors defendants were not bona fide.

, Though, in addition to the foregoing, there are claims against Sayre, Strong, and Beiseker and Phillips and the Sayre, Strong Grain & Merchandise Company for unpaid balances on stock, and against the said Phillips, Sayre, Strong, and Beiseker for malfeasance in office in allowing the property of the company to be unlawfully diverted, in creating debts beyond the amount of the subscribed capital stock, and

in allowing money to be unlawfully paid to themselves in the form of dividends, these parties have not appealed; and providing the joinder was properly made, and which we have before held to be the fact, these claims and interests need not here be considered.

The question then is, What are the rights and liabilities of the defendant James T. Morris and the creditor defendants whom he represents and for whose use he holds in trust the property in controversy?

It is first urged by the appellants that, although it is charged in the complaint that each of these persons "had knowledge prior to the transfers aforesaid of the fraudulent and unlawful scheme, purpose, and intent" of the said directors, and "participated therein," no conspiracy is alleged; and that, although knowledge of a fraudulent intent of a seller by a purchaser may of and by itself avoid a sale, this is not the case or result of knowledge acquired by a creditor. This is undoubtedly the law. See Lockren v. Rustan, 9 N. D. 43, 81 N. W. 63.

The real questions then to be determined are:

(1) Does the complaint allege that a preference was given?

(2) If so, can a corporation in contemplation of dissolution divide its assets in such a manner as to pay the claims of some creditors, leaving others unpaid and unprovided for?

And, first, does the complaint allege that a preference was given? We think it does.

Counsel for the respondents, it is true, argue that there is no allegation in the complaint connecting Morris and the creditor defendants with the scheme devised by the directors to transfer all the assets and cease business without paying the claim of the John Miller Company; and they further argue that the transfer to Morris and his clients should not be considered a preference, because there was enough property transferred to the directors to pay the claims of the John Miller Company. But in this we believe they are in error. The complaint alleges one scheme devised by the directors, and participated in by Morris and his clients to wind up the corporation by transferring all the assets to the defendants (stockholders, directors, and favored creditors), and thus avoid the payment of the claims of the John Miller Company. It alleges that "all of said transfers were made in furtherance of the

same fraudulent and unlawful scheme, and were intended to and did effectually place all the property and assets of said corporation beyond the reach of the said John Miller Company and other creditors similarly situated by the ordinary process at law."

It alleges that: "Each of the persons and corporations who took said property and money, or received the proceeds of the collection of said notes, bills, and accounts, *had knowledge, prior to the transfers and conveyances* aforesaid, of the *fraudulent* and unlawful *schemes, purpose, and intent* aforesaid, and participated *therein.*"

The unlawful scheme charged in the complaint is that the said directors, "without dissolving and winding up said corporation in the manner provided by law, and without paying, or providing in any manner for the payment of the claims of said John Miller Company, decided to wind up the affairs of said corporation and cease conducting said business, and to divide the assets of said corporation among themselves and the other defendants herein who were creditors of the same class as the said John Miller Company," and then and there, to accomplish said purposes, and with the intent of cheating and defrauding the John Miller Company in the collection of its judgments, and "with the intent of preferring the defendant creditors, and of giving and permitting them to receive payment of their claims against said corporation, to the exclusion of said John Miller Company and other creditors of the same class who might be similarly situated," made the transfers to Morris or to the directors (the facts being unknown to plaintiff) in trust, to distribute the proceeds among the creditor defendants. The paragraph then proceeds to charge that the transfers *to the directors* of the balance of the property were made at the same time and in connection with the same scheme; the allegation being, "And also with the same purposes and with the same intent then and there wrongfully and unlawfully" disposed of the stock of merchandise for the benefit of the directors, and "also then and there for the same purposes and with the same intent wrongfully and unlawfully" transferred to the defendant Phillips the balance of the corporate assets,"— all of said transfers being made without any consideration passing to said corporation."

The transfers being made at the same time and as a part of the same scheme or transaction, and there being no property left belonging

to the corporation, it would seem that the result was a preference to the Morris creditors.

But was the preference unlawful? This is the main point to be considered.

There can be no doubt that, after a corporation has actually been dissolved and has gone into liquidation, its assets become a trust fund both for its creditors and stockholders. 3 Thomp. Corp. pp. 2410, 2411, § 3345.

The first question is whether the directors, who have decided to wind up the affairs of a corporation which is insolvent, can prefer creditors, and, by failing to take the statutory proceedings for the dissolution and winding up of such corporation, do that which, if such proceedings had been taken, they could not do.

In discussing this subject Clark and Marshall on page 2365 of vol. 3 of their work on Private Corporations say:

"In some jurisdictions it has been held that when a corporation becomes insolvent, and determines to make an assignment for the benefit of creditors, or ceases business, or determines to cease business, although no proceedings may have been instituted against it for winding up its affairs, its assets are so far a trust fund for the benefit of *all* its creditors ratably that it cannot, as a natural person may, prefer one or more of its creditors, to the exclusion of others by a voluntary conveyance, mortgage, pledge, assignment, confession of judgment, or otherwise; and that, if it attempts to do so, a court of equity will set the preference aside, and distribute the assets *pro rata* among all the creditors.

"This view, however, is contrary to the overwhelming weight of authority. The late cases show that the assets of a corporation are not in any proper sense a trust fund for creditors, so long as no proceedings for a winding up have been instituted, even though it may be hopelessly insolvent, except to such an extent that they cannot be distributed among or withdrawn by stockholders to the prejudice of creditors; but, on the contrary, a corporation, although insolvent, holds its assets just as a natural person holds his property, with the same power to dispose of it to secure or pay debts." See also 7 R. C. L. 755–758; Adams & W. Co. v. Deyette, 8 S. D. 119, 129, 31 L.R.A. 497, 59 Am. St. Rep. 751, 65 N. W. 471.

This quotation correctly states the general condition of the law upon the subject, and nothing can be gained by reviewing the particular cases. There can, indeed, be no doubt that, although the legislatures have in a few instances changed the rule, and eminent text-writers have from time to time protested, the great weight of judicial opinion is opposed to the so-called trust fund theory.

It also appears to us that this majority rule has been adopted by the legislature of North Dakota, and that no matter what may be our individual opinion as to the wisdom of the legislative enactment we are none the less bound thereby.

Section 7218 of the Compiled Laws of 1913 provides that "a debtor may pay one creditor in preference to another, or may give to one creditor security for the payment of his demand in preference to another."

This statute, or rather one in every respect identical therewith, was construed by the supreme court of California in the case of Merced Bank v. Ivett, 127 Cal. 134, 59 Pac. 393, and the word "debtor" therein contained was held to include corporations as well as partnerships and individuals. We can see no escape from this conclusion. It is also apparent to us that the word "debtor" can hardly be construed to embrace merely solvent debtors, for it can scarcely be conceived that a solvent debtor can be thought to prefer creditors.

It is also apparent to us that the statutes of North Dakota, which relate to the dissolution of insolvent corporations and which provide for a ratable distribution of their assets, do not prescribe or purport to prescribe a mandatory procedure which must be followed in all instances. They apply, in short, only after the aid of the courts has been sought to effect the dissolution; and they do not, prior to such time, "either in express terms or by implication, place any restraint upon the right of creditors to pursue any other remedies afforded them by the law, nor [do they] undertake to prevent them from acquiring preferences in any manner or to any extent allowed by the law in the case of natural persons." Billmyer Lumber Co. v. Merchants Coal Co. 66 W. Va. 696, 26 L.R.A.(N.S.) 1101, 1107, 66 S. E. 1073.

We are therefore of the opinion that in North Dakota we are committed to the so-called majority rule, and must adhere thereto until the legislature, as it has already done by § 6450 of the Compiled Laws of

1913, in the case of limited partnerships, chooses to change or to relax the same.

But is the transfer invalid because given to hinder and delay creditors in the collection of their claims until such times as the creditors represented by Morris were paid the amounts of their claims, and because the directors are saved harmless from loss by reason of their guaranty? Is it invalid under the ruling of the case of Maclaren v. Kramar, 26 N. D. 244, 256, 50 L.R.A.(N.S.) 714, 144 N. W. 85. In this case we held that a purported general assignment for the benefit of creditors, which contains a provision directing the assignee or trustee, after converting the property into cash, "to distribute the proceeds of said property ratably among the creditors of the party of the first part as shall consent to this trust agreement, and shall agree in consideration of the benefits accruing to them thereunder, to absolve and discharge the party of the first part from any and all liability," was void upon its face as an unlawful attempt by the debtor to coerce his creditors to surrender a portion of their just share of the estate, and tending directly to delay and hinder them in the collection of their claims.

Such purported assignment was also held to be void for the reason that "it does not purport on its face to transfer all of the debtor's unexempt property, and provides for the payment to the debtor of any surplus which may remain in the trustee's hands after satisfying the claims of the assenting creditors, thus operating to put such surplus beyond the reach of nonassenting creditors, and to hinder and delay them in the collection of their demands."

There can be no doubt of the correctness of these holdings. In the case at bar, however, there is no allegation of any agreement on the part of the creditors or trustees that any surplus was to be repaid to the debtor, and therefore no claim that any property was by that means concealed from the other creditors, or that they were hindered or delayed from levying upon such surplus; nor is there any allegation of any general assignment. If, therefore, it is competent for a debtor to prefer certain creditors, there seems to be no illegality in the transaction.

All that the complaint alleges, indeed, is that a certain portion of the assets of the corporation "were conveyed to the said Morris, who

was acting as the agent of the defendant creditors, in trust to convert into cash and distribute the proceeds, less collection charges, among such defendant creditors, to apply on their claims against said corporation." There is no allegation either that the payment was in full and would exclude such creditors from recovering any balance that might be due, or that there was or was expected to be any surplus which was to be repaid to the debtor corporation. Such being the case and the condition of the pleadings, the decision and the reasoning of the case of Maclaren v. Kramar, supra, do not apply.

But does the complaint state a cause of action against the respondents, for the reason that it not only charges a preferential conveyance to them, but a joint scheme and conspiracy entered into by them, together with the other defendants, "to place all of the property and assets of said corporation beyond the reach of the said John Miller Company and other creditors similarly situated," and "to divide the assets of the said corporation among the clients of the said Morris?" We think it does.

We have of course no doubt that an insolvent corporation may not pay illegal dividends. We are also of the opinion that, although an insolvent corporation may as a general rule prefer certain of its creditors, and its assets are not to that extent a trust fund in the hands of its directors, such assets are a trust fund as against the individual claims of the directors themselves. We are of the opinion, indeed, that to this extent the assets of a corporation are a trust fund for the payment of its debts, and that creditors have a lien upon them which is prior in point of right to any claim which the stockholders as such can have, and that courts should be astute to detect and defeat any scheme or device which is calculated to withdraw this fund or in any way to place it beyond the reach of creditors. Buck v. Ross, 57 Am. St. Rep. 60 and note pp. 66, 77, 78, 68 Conn. 29, 35 Atl. 763; 3 Clark & M. Priv. Corp. § 786, pp. 2411, 2419; 8 Thomp. Corp. § 6207, p. 683; Bosworth v. Allen, 168 N. Y. 157, 55 L.R.A. 761, 85 Am. St. Rep. 667, 61 N. E. 163.

If then, as we believe is charged in the complaint, a scheme was planned and participated in by all of the defendants, under which the directors should enrich themselves at the expense of the plaintiff and other unpreferred creditors, and the property transferred to Mor-

ris was transferred in furtherance of and as a part of this general scheme and transaction, the transfer was fraudulent and should be set aside. Whether these facts can be proved or not is of course a matter to be determined on the trial, and not by us here.

The order overruling the demurrer is for these reasons affirmed.

ROBINSON and GRACE, JJ. We concur in the result only.