The plaintiff is a creditor of the defendant L.J. Kuske Realty Company. During all the times involved in this controversy the defendants, L.J. Kuske, O.O. Juliar, H. Ingvaldson, Dick Engbrecht, and A.V. Zuber, were directors of said corporation. Plaintiff was the owner and holder of a certain note executed by the defendant corporation and secured by a real estate mortgage. The mortgage was foreclosed by action. A deficiency judgment resulted. A general execution was issued upon such judgment, which execution was returned unsatisfied. The plaintiff thereupon instituted this action to set aside certain transfers of property alleged to have been made by the defendant corporation to pay debts owing by the corporation to *Page 481 
certain of the directors to wit: Dick Engbrecht, A.V. Zuber and L.J. Kuske. The plaintiff demanded judgment that such transfers be set aside and that it have judgment against all the directors of the corporation for the amount of its deficiency judgment. The trial court rendered judgment in favor of the plaintiff and against all of the defendants, awarding to the plaintiff a money judgment against each and all of the individual defendants for the full amount remaining due upon the deficiency judgment, together with interest and costs thereon. The defendants have appealed from the judgment and demanded a trial anew in this court.
There is little, if any, controversy as regards the controlling facts. They are substantially as follows: In October 1919, the L.J. Kuske Realty Company was incorporated by the individual defendants named in this action. The corporation had an authorized capital of $50,000, of which $30,000, was issued to the following named persons and in the following stated amounts to wit: To L.J. Kuske, $10,000; to H. Engvaldson, $5,000; to O.O. Juliar, $5,000; to A.V. Zuber, $5,000, and to Dick Engbrecht, $5,000. This was all the stock issued. The stock so issued was fully paid; and such stock has at no time thereafter been transferred upon the books of the corporation to any other person, but has remained the property of the persons to whom it was originally issued. The stockholders were also the directors and officers of the corporation. The corporation was organized for the purpose of engaging in the real estate business. On or about November 1st, 1919, the corporation purchased a quarter section of land in Wells County from the plaintiff Lyness, and in payment (either in whole or in part) it executed and delivered to him a promissory note in the sum of $5,620, payable November 1st, 1925, bearing interest at 6 per cent per annum; and as security for the payment of such note it, at the same time, executed and delivered to him a real estate mortgage upon the quarter section of land, which the plaintiff had sold to the defendant corporation. In other words, the promissory note and mortgage held by the plaintiff were given in payment (either in whole or in part) of the purchase price of the land sold by Lyness to the defendant corporation. In April, 1920, the defendant corporation sold such quarter section of land to one Bluhm. And as a part of the transaction Bluhm assumed the indebtedness secured by plaintiff's mortgage and agreed to pay the same. *Page 482 
On July 24th, 1922, the defendant corporation was the owner of 1960 acres of land in Wells county, all of which, with the exception of a forty acre tract, was subject to outstanding mortgages. On that day the corporation owed unsecured indebtedness, evidenced by promissory notes, aggregating in all $21,590.79 principal, which together with accrued interest made a total unsecured debt of some $24,000. The greater portion of such indebtedness consisted of obligations due to two banks, namely, the First National Bank of Fessenden and the Farmers State Bank of Cathay. It appears that the defendant corporation in 1920 had borrowed from the First National Bank of Fessenden up to the limit which that bank was authorized to loan to any one individual or corporation; and as interest and tax payments on lands belonging to the corporation fell due Engbrecht and Zuber advanced the necessary moneys to pay them. Later when these parties sought to be reimbursed for the moneys so advanced the corporation was unable to borrow money elsewhere for that purpose, and it was agreed that the First National Bank of Fessenden should make a loan for that purpose provided Engbrecht and Zuber gave their personal notes for the amount required. These parties thereupon gave their notes to the First National Bank of Fessenden in sums aggregating in all $9,000, and the bank, upon these notes, loaned $9,000, which was used to reimburse Engbrecht and Zuber for the sums they had advanced for the purpose of paying taxes and interest upon mortgages on the lands belonging to the defendant corporation. At another time in order to obtain further credit for the corporation Engbrecht and Zuber turned over to the First National Bank of Fessenden a note executed to them by one Schwandt, in the sum of $1,300. Here again, although the loan was extended upon a note belonging to Engbrecht and Zuber, it was in fact made to and for the benefit of the defendant corporation.
At a meeting held July 24th, 1922, at which all the directors of the corporation were present, it was found that the corporation owed upon its unsecured obligations to the First National Bank of Fessenden (including the amount which it owed upon the notes which had been executed for its benefit by Engbrecht and Zuber) some $16,524.61, and that it owed to the Farmers State Bank of Cathay the sum of $6,925.79, or a total indebtedness to both banks of $23,550.40. In order to liquidate these obligations it was agreed that certain of the lands belonging *Page 483 
to the corporation should be sold. It was further agreed that Engbrecht and Zuber should buy, and the corporation should sell to them, 960 acres of land. This land was subject to outstanding incumbrances, the principal of which amounted to $19,046. The value of this land, for the purpose of the deal, was fixed at $30,480. There was past due interest upon the mortgages, and past due taxes, against the land aggregating $1,383.60. There was due upon the $9,000 notes executed by Zuber and Engbrecht to the First National Bank of Fessenden for the benefit of the defendant corporation, principal and interest aggregating $10,050.40. Zuber and Engbrecht received the conveyance for the land subject to mortgages and paid therefor $10,050.40 due to the First National Bank of Fessenden, and also paid the past due interest on the mortgages and delinquent taxes aggregating the further sum of $1,383.60. It was also agreed that the corporation should sell 480 acres of land to L.J. Kuske and his wife. The value of this land was placed at $26,500. It was subject to outstanding mortgages aggregating $18,000, leaving an equity of $8,500. The corporation, also, owned a note in the sum of $5,000, executed by one G.A. Kuske. It was agreed that L.J. Kuske should buy this note, too. For the equity in said land and for the note L.J. Kuske agreed to pay and paid notes and obligations of the defendant corporation to the Farmers State Bank of Cathay aggregating $6,925.79, and obligations due to the First National Bank of Fessenden aggregating $6,374.21. As a result of the transactions between the defendant corporation and Engbrecht, Zuber and Kuske, the unsecured obligations of the defendant corporation to the two banks were paid. The corporation still remained the owner of one tract of land subject to a mortgage, and of another tract which it held under a purchase contract. The corporation ceased all active operation from that time on. And later the vendor in the purchase contract caused the same to be cancelled because of default in the payments stipulated to be made thereunder; and in 1924 the mortgage upon the other tract was foreclosed.
The plaintiff instituted an action to foreclose his mortgage and obtained a judgment of foreclosure on May 27th, 1924. The premises were bid in by the plaintiff at foreclosure sale on July 5th, 1924, for the sum of $4,800, leaving a deficiency judgment against the defendant realty company and Bluhm (the purchaser who had assumed and agreed to *Page 484 
pay the mortgage), in the sum of $2,413.45. On July 14th, 1924, a general execution was issued upon the deficiency judgment, and the same was returned by the sheriff, on the same day, wholly unsatisfied.
The plaintiff thereupon instituted this action under § 7989, Comp. Laws 1913, which provides: "Whenever a judgment shall be obtained against any corporation incorporated under the laws of this state and an execution issued thereon shall have been returned unsatisfied in whole or in part, the judgment creditor or his legal representative may maintain an action to procure a judgment sequestrating the property of a corporation and providing for a distribution thereof."
Plaintiff invokes and largely, if not wholly, predicates his action on §§ 4543 and 4544, Comp. Laws 1913, which so far as material here provides:
Section 4543: "The directors of corporations must not make dividends except from the surplus profits arising from the business thereof; nor must they divide, withdraw or pay to the stockholders, or any of them, any part of the capital stock, nor must they create debts beyond the subscribed capital stock or reduce or increase the capital stock, except as specially provided by law. . . ."
Section 4544 (as amended by chapter 100, Laws 1919):
"For a violation of the provisions of the last section the directors under whose administration the same may have happened, except those who may have caused their dissent therefrom to be entered at large on the minutes of the directors at the time, or were not present when the same did happen, are, in their individual and private capacity, jointly and severally liable to the corporation and to the creditors thereof, in the event of its dissolution, to the full amount of the capital stock so divided, withdrawn, paid out, or reduced, or debt contracted. . . ."
In our opinion the evidence in this case wholly fails to establish any cause of action under §§ 4543 and 4544, supra. In the instant case no dividend was declared; and there was no division among the stockholders of any part of the capital stock of the corporation. In fact, there was no division among the stockholders of the corporation whatsoever. The only thing the corporation did was to pay certain legitimate debts — debts which had been created in good faith for the corporation's benefit. The debts in question were owing to two banks and aggregated to exceed $23,000, and on some $10,000 of this indebtedness *Page 485 
two of the directors were liable as sureties. The payment of this indebtedness in no manner violated § 4543, supra, nor are we aware of any provision of law in this state which was violated by such transaction. It is well settled in this jurisdiction that a corporation has a right to prefer its creditors. John Miller Co. v. Harvey Mercantile Co. 38 N.D. 531, 165 N.W. 558; Farmers State Bank v. Brown, 52 N.D. 806, 204 N.W. 673. But in the case at bar there is no evidence that there was any intention or purpose on the part of the directors to prefer any creditors at all. The directors merely sought to pay all unsecured claims of the corporation. They paid no attention to the secured ones. In other words they did not take into consideration claims that were secured by mortgages upon lands belonging to the corporation. According to the evidence the directors apparently felt that the secured creditors were not interested but had ample security for their claims. Plaintiff's debt was not due at the time, and it was secured by a purchase price mortgage. There is not the slightest basis in the evidence for any inference that the directors had any intention or desire to hinder, delay or defraud any creditor of the corporation, either secured or unsecured. There was no finding by the trial court, and in our opinion the evidence furnishes no basis for a finding, that the directors were actuated by fraud or by a desire to gain any advantage for themselves at the expense or to the detriment of the creditors of the corporation. Neither is there any finding, or any basis for a finding, that the corporation was insolvent. On the contrary, the record shows that at a certain point in the trial, certain questions were asked by plaintiff's counsel foreshadowing an inquiry into the solvency of the corporation; that the trial court then suggested that if the question of solvency or insolvency were involved it would be necessary to introduce evidence as to the value of the properties of the corporation. Thereupon plaintiff's counsel specifically intimated that the inquiry would be abandoned and no further testimony along that line was offered. In the circumstances established by the evidence in this case we find no reason why the corporation might not, with entire propriety, pay its unsecured debts even though some of the directors were liable as sureties on part of such debts. John Miller Co. v. Harvey Mercantile Co. and Farmers State Bank v. Brown, supra; 14a C.J. 132-136, 188; 4 Fletcher, Cyc. Corp., §§ 2325 et seq.; 7 R.C.L. 478, et seq. See also 7 R.C.L. 761; Sanford *Page 486 
Fork Tool Co. v. Howe, B. Co. 157 U.S. 312, 39 L. ed. 713, 15 Sup. Ct. Rep. 621. There can be no question but that on the 24th day of July 1922, the Farmers State Bank of Cathay and the First National Bank of Fessenden could have maintained actions against the L.J. Kuske Realty Company upon the obligations which were paid to those banks by the persons who purchased realty from the defendant corporation on that date, and that if such actions had been maintained, all the property of the corporation might properly have been subjected to the payment of these claims. See 7 R.C.L. 761, 762.
Nor is there any basis in the evidence in this case for setting aside the sales made by the corporation to certain of its directors on the ground that the directors represented both themselves as indivduals and the corporation as directors in a transaction in which their individual interests were adverse and antagonistic to the corporate ones. In this case the evidence does not furnish any basis for a charge of bad faith on the part of the directors. In our opinion there is not the slightest reason to believe that the transaction was consummated in order to obtain any personal advantage for any of the directors. There is no contention that they bought the lands at less than their real value. On the contrary, upon the trial it was specifically stated that the plaintiff accepted the values placed upon the lands at the time of sale as a correct basis of value; and, as already indicated, there is no showing that the corporation was insolvent at the time of the transaction. The corporation still retained ownership of equities in lands which, so far as the evidence in this case shows, were probably as valuable as some of those purchased by the directors in order to enable the corporation to pay its unsecured creditors. It is well settled that in these circumstances a general creditor has no right to assail the transaction between the corporation and the directors and ask that it be set aside.
"The rule that a director or other officer cannot act for the corporation in a matter in which he is interested is intended for the benefit of the corporation and its stockholders who may, like an individual, elect to confirm a transaction which could have been repudiated, in which case the contract becomes fully binding on the corporation to the same extent as any other duly ratified contract entered into by an unauthorized agent. So the rule is for the benefit of the corporation and its stockholders, and does not extend to its creditors in the absence of *Page 487 
fraud, and when a disposition of the property of a corporation is assailed by its creditors, they are not clothed with the right of the corporation or of its stockholders to set it aside solely on the ground that it was entered into by representatives who had put themselves in a relation antagonistic to the interests of their principal. Corporation creditors can only impeach such a transaction on proof of the insolvency of the corporation at the time of its consummation, or that it was entered into with intent to hinder, delay, or defraud them." 7 R.C.L. p. 483, § 463. See also 14a C.J. pp. 188, 189.
The judgment appealed from is reversed, and the action dismissed.
BIRDZELL, BURKE, JOHNSON, and NUESSLE, JJ., concur.