[File No. 6271.]

R. R. SMITH, Appellant, v. E. A. KORNKVEN, as Receiver of the Bottineau National Bank, an Insolvent Corporation, Respondent.

(256 N. W. 210.)

Opinion filed August 11, 1934.   Rehearing denied September 17, 1934.

*Maurice Weeks,* for appellant.

*Asmunder Benson,* for respondent.

Burr, Ch. J. Plaintiff claims an estate in real property situated in the city of Bottineau. The defendant alleges that the Bottineau National Bank, of which he is receiver, holds a sheriff's certificate upon execution sale of the said property; and that any interests which the plaintiff appears to have was obtained by him "for the purpose of cheating, frauding, and hindering the said E. A. Kornkven as receiver of the Bottineau National Bank in the collection of his judgment."

There is little dispute in the facts. In 1925 the Bottineau Oil Company, built a service station on the premises involved, and conducted a service and filling station.

It is undisputed that the Oil Company paid $2,000.00 for the real property at a time when prices were high; the Oil station erected on the premises cost, including the pumps and equipment installed, somewhat in the neighborhood of $2,000.00 more. The testimony also shows that in the period of 1931 and subsequent years the pumps had become obsolete and the property had run down.

The company became indebted to W. H. Barber Company of Minneapolis and together with plaintiff, gave a mortgage on the premises to secure the payment of the notes representing the debt. A second mortgage on the premises was given to the Northwestern Trust Company for $2,000.00 to secure payment of indebtedness due that company.

In 1927 the Oil Company borrowed money from the Bottineau National Bank giving notes therefor. Payments were made and additional sums borrowed November 1930 at which time the Oil Company gave two new notes—one for $1,500.00 and one for $500.00—both due

May 1, 1931. These notes were signed by the Oil Company through the plaintiff as president and manager, but the plaintiff did not become indebted individually thereon.

In June 1930 judgment was obtained by the W. H. Barber Company on the notes against the makers for about $2,500.00 without foreclosure of its mortgage. The creditor was pressing for payment of its claims, and threatened levy upon and sale of the premises and all merchandise of its debtor. At that time the premises were worth from $3,500.00 to $4,000.00. The attorney for the W. H. Barber Company said the property was worth $3,500.00 at the time of the deed to the W. H. Barber Company.

The liens against the property at that time were: the $2,500.00 judgment in favor of the W. H. Barber Company, on which $527.00 was paid; $2,000.00 due the Northwestern Trust Company; $70.00 interest due upon these mortgages; and unpaid taxes for two years amounting to $235.00. It is clear the Oil Company had no equity in the premises, and W. H. Barber Company refused to have any further dealings with the Oil Company in the way of extensions and insisted on settlement.

Smith at this time was the manager of the Oil Company and attempted to maintain it in business. The W. H. Barber Company refused to consider the company further and offered, if deeded the premises, to sell the property back to Smith, personally. At a regularly called meeting of the Oil Company it was agreed to comply with the W. H. Barber Company demands and a quit claim deed to the premises was given the W. H. Barber Company on or about February 1, 1932 and recorded April 6, 1932. The testimony shows that by giving the deed the Oil Company prevented levy on its merchandise.

Smith then entered into a contract with the W. H. Barber Company for the purchase of the premises. The consideration for this contract was the assumption of the debt due the W. H. Barber Company, the assumption of the mortgage to the Northwestern Trust Company, and agreement to pay the past due interest and the unpaid taxes. Clearly Smith gave full value. The contract was not recorded until May 1933, Smith saying "I did not think it would affect my interest in it at all, whether it was recorded or not recorded until it was time."

Upon giving the quit claim deed to the W. H. Barber Company the

Bottineau Oil Company went out of business. Upon obtaining the contract Smith went immediately into possession of the property and operated it individually. After a short period he organized the Smith Oil Company consisting of himself, his wife and one McIntosh, and rented the premises to this company.

The Bottineau National Bank closed its doors on June 22, 1931, and the defendant has been receiver ever since. In October he commenced action on the notes to the bank, against the Bottineau Oil Company and judgment therein was docketed June 6, 1932.

September 17, 1932 the defendant levied upon the property under the judgment obtained by the Bottineau National Bank. The premises were sold in satisfaction of the judgment and on September 17, 1932 the sheriff issued a certificate of sale under which the defendant lays claim to the property. This certificate was recorded on the same day.

The Smith Oil Company operated a short time. Smith then leased the premises to the Westland Oil Company, giving the company an option to buy the premises within a certain number of years upon payment of $11,000.00.

· Since obtaining the contract for the deed Smith has made payments on the indebtedness which he assumed and at the time of trial he owed W. H. Barber Company $850.00 and interest from February 1, 1933.

It is the contention of the defendant that the transaction between Smith individually and the W. H. Barber Company was fraudulent and entered into for the purpose of defrauding the Bottineau National Bank.

The trial court found in favor of the defendant, holding that whatever title plaintiff acquired through his transactions with the W. H. Barber Company was obtained in trust for the creditors and stockholders of the Oil Company; that plaintiff has no interest, that any interest plaintiff has in the premises is subject to the rights of the W. H. Barber Company and of the defendant on its certificate of sale; that the deed from the Bottineau Oil Company to W. H. Barber Company and the contract for deed made between the Barber Company and Smith are declared to be null and void, except that W. H. Barber Company has a lien on the premises for the amount due it, which lien is

superior to that of the defendant; that any claim of the defendant under this certificate of sale is superior to any interest of the plaintiff.

From the judgment entered the plaintiff appealed.

The issue involves the good faith of the transaction between the Bottineau Oil Company and the W. H. Barber Company and the transaction between the W. H. Barber Company and Smith.

There is nothing in the evidence whatever to show any sharp practice or unfair dealings on the part of Smith in his representing the Bottineau Oil Company in this transaction with the W. H. Barber Company. It is true that where an officer of a corporation appears to obtain the property of a corporation of which he is an officer the burden of proof of showing the good faith of such transaction is upon the officer. Stuart v. Larson (C. C. A. 8th) 298 F. 223, 38 A.L.R. 79, 3 Am. Bankr. Rep. (N.S.) 382. If the contract is without fraud such dealings can not be questioned by other creditors, even if the officer be a director. Lyness v. L. J. Kuske Realty Co. 54 N. D. 479, 209 N. W. 993, 48 A.L.R. 474.

It is the claim of the defendant that the plaintiff was purchasing property from a company of which he was an officer; but the facts do not show this. The company was practically insolvent. Its principal creditor was pressing and had such advantage that the company could readily be put out of business. Under those circumstances the corporation quit-claimed all this property to W. H. Barber Company. It was a deed, not a mortgage. The evidence shows conclusively that it was not the case of a mortgagor giving a deed to a mortgagee for security and then taking back a contract. The mortgagee already had a judgment lien, and a mortgage on the premises, and was determined to collect. The deed was intended to and did transfer all the Oil Company's interest to W. H. Barber Company. Consequently the Oil Company had no interest remaining in the property. The subsequent contract was between the plaintiff and the W. H. Barber Company. It was not for the benefit of the Oil Company, nor a subterfuge to get the property. There is no dispute in the testimony but what the W. H. Barber Company would no longer deal with the Oil Company. It would deal with Smith.

The undisputed testimony shows that the transaction between the Oil Company and the W. H. Barber Company was had at the insis-

tence of the W. H. Barber Company. The counsel for the company said, with reference to the deed, "we demanded it. My client insisted that I demand it." Smith's testimony is to the same effect. Had the transaction ended there the defendant would have no lien. The property would have belonged to the W. H. Barber Company. As the company had not foreclosed its mortgage or its judgment the property was subject to the mortgage of the Northwestern Trust Company. Had the W. H. Barber Company sold to some third party there could be no claim that the defendant had a lien. That the company sold to Smith is immaterial provided it was not a transaction for the benefit of the Oil Company, or to take advantage of the Oil Company or to defraud the defendant. Smith thought there was a possibility of future business and was willing to purchase the property from the W. H. Barber Company and take his chances. The record is undisputed that there was no intention or thought of re-conveying to the Oil Company. As Smith testifies: "It was a clear cut deal and I was to take it and be personally responsible for all the claim."

Smith was not buying from a corporation of which he was an officer. The claim of the defendant that such was the situation is wholly unsubstantiated by the facts in the case. The record shows quite conclusively that Smith has established good faith in dealing with the W. H. Barber Company.

The defendant was not hurt by this transaction. It does not pretend to have had a lien on this property until its judgment was docketed, and if by this time its debtor had no claim then it obtained no lien.

It is said that by means of the transaction between the W. H. Barber Company and Smith the latter devised a scheme to defraud defendant. There is no proof whatever in support of this claim. The testimony of Smith and the testimony of the agent for W. H. Barber Company and the facts of the case show no fraud.

The record shows without much dispute that Smith offered the receiver of the bank "all the notes and accounts receivable as collateral if he would take them;" that these amounted to about $4,500.00 when offered and that the offer was refused and the receiver stated that the company "could handle them better than he could." The very best the receiver could say is that he did not recall this offer. The record

also shows that Smith made various attempts to borrow money in order that the debt to the bank could be paid.

It is said that Smith, as manager of the company, filed a general denial to the complaint of the defendant, in order to delay the entry of judgment and that this was done to defraud. The evidence shows there was a denial by the Oil Company, through Smith its officer, and that when the case came on for trial the answer was withdrawn and the defendant obtained its judgment by default; but the evidence does not disclose fraud. Smith testified that he supposed it was necessary to enter a general denial, and that he did what he understood was customary. There is nothing to contradict this motive.

It is claimed that Smith made financial statements to the Bottineau bank at the time the notes were renewed and that these statements were not true. The record however is undisputed that no property statement was given and no property statement was asked when the original indebtedness was given. The only testimony in regard to the time of the filing of financial statements is the testimony of Smith who shows that whatever financial statements were given were given after the renewals were had. While the record shows that the Oil Company did give statements there is nothing to show that they were furnished by Smith. He was not the president of the company at the time the indebtedness was incurred. Smith is specific in his statement that he gave no statements at the time the notes were renewed but that he did "subsequently to all renewals."

When the transaction between the W. H. Barber Company and Smith was completed the defendant was in exactly the same position as it was before the transaction was begun. Later the defendant obtained this judgment and levied upon the property. If Smith had had no dealings with the company the Bottineau National Bank would not have been in better position. It would have had a judgment against the Oil Company, but no lien on the property, for by that time the property was the property of W. H. Barber Company and subject to the mortgage of the Northwestern Trust Company, the unpaid interest, and the unpaid taxes.

It is urged that the Oil Company had a substantial equity in the property when sold to W. H. Barber Company; but it is very clear from the testimony that this company paid all it was worth. The

testimony given at the trial shows the value of the property at the time of trial ranged from $3,500.00 to $5,000.00, but it is the value at the time of the Smith transaction which is important. In any event these figures are estimates and the evidence shows up strongly that the equipment and buildings had depreciated since erected and that there has been a decided slump in values.

Much is made of the fact that Smith, who had been a creditor of the Oil Company, had in fact been paid from other sources. We do not consider this material. Smith had been a creditor with a mortgage; but assigned the mortgage to his wife who collected from other property. If Smith bought the premises from the W. H. Barber Company in good faith he had a perfect right to do so even if he were connected with the Oil Company. It is clear the W. H. Barber Company would not deal with its debtor. It would deal with Smith personally. The transaction shows Smith has as much interest in the property as any "outsider" would have who bought it from W. H. Barber Company, and the quit claim deed conveyed the interest of the Oil Company to W. H. Barber Company, subject to the Northwestern Trust Company mortgage, the delinquent interest and the delinquent taxes.

When the defendant obtained judgment the property was no longer owned by the Oil Company. The deed to W. H. Barber Company was on record and was a good faith transaction. The docketing of the judgment against the Oil Company would not affect this property because the Oil Company had no interest in it. The defendant had no judgment against Smith personally and it was immaterial that Smith's contract for deed was not on record. For the defendant to have a lien on this property there would need to be an interest therein belonging to his judgment debtor—the Oil Company.

The judgment of the lower court is reversed, and judgment ordered showing plaintiff is owner of the premises under his contract with the W. H. Barber Company; and that this right is superior to any claim of the defendant.

BURKE, NUESSLE, MOELLRING, and CHRISTIANSON, JJ., concur.